Filed 5/17/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br><br>DENYS REYES,<br><br>        Defendant and Appellant. | A152557<br><br>(Contra Costa County<br>Super. Ct. No. 51703156) |

A jury found defendant Denys Reyes guilty of receiving a large capacity magazine and possession of a firearm by a felon after police found a firearm in a car in which Reyes was the front seat passenger.

Reyes raises three claims of evidentiary error. He contends the trial court committed prejudicial error in (1) admitting evidence of a Snapchat story found on his cell phone, (2) excluding a hearsay declaration against penal interest made by the driver of the car, which he contends should have been admitted under Evidence Code section 1230, and (3) admitting evidence of a prior incident in which Reyes was found with firearms in his car.

We conclude Reyes's second and third contentions have merit, and reverse.

**FACTUAL AND PROCEDURAL BACKGROUND**

*Traffic Stop*

Around 6:00 p.m. on September 3, 2016, Richmond Police Officer Douglas Gault and his colleagues conducted a traffic stop of a green Infiniti. The driver was Jose Navarro. Reyes sat in the front passenger seat with a green lunch pail on his lap. Gault suspected Reyes "was trying to hide something because he wouldn't move and he was breathing heavily," so he asked Reyes to step out of the car and pat searched him. Gault

1

then leaned into the car and noticed an orange backpack unzipped with a loaded firearm inside. The backpack was on the "[p]assenger floorboard to the feet of Mr. Reyes leaning against the center console." The firearm was a Glock with an extended magazine capable of holding 50 rounds of ammunition. There were at least 40 rounds of ammunition in the magazine. According to Gault, the magazine was "pretty unique." The firearm was not registered to either Reyes or Navarro.

*Charges*

Reyes and Navarro were charged with receiving a large-capacity magazine (Pen. Code, § 32310, subd. (a); count 2), and Reyes was charged with possession of a firearm by a felon (*id*., § 29800, subd. (a)(1); count 3). It was further alleged that Reyes committed count 3 while he was released from custody on bail (*id.,* § 12022.1).[1]

Reyes and Navarro were tried together. The jury found Navarro guilty as charged but was unable to reach a verdict on Reyes, and the trial court declared a mistrial. Reyes was retried.

*Prosecution's Case*

On retrial, Gault testified about the traffic stop, and his body camera video of the traffic stop was played for the jury.[2] Gault testified Reyes was cooperative throughout the traffic stop but Navarro was not.

Snapchat Evidence

Gault confiscated Reyes's cell phone, and Darryl Holcombe, a senior inspector with the district attorney's office, extracted data from the phone. Reyes's phone had the social media application Snapchat, which Holcombe explained allows a user to take a

---

[1] Navarro was also charged with possession of a firearm and ammunition by a non-registered owner (Pen. Code, § 25850, subds. (a), (c)(6); count 1) with gang-related enhancements (*id*., §§ 186.22, subd. (b)(1)(A), 12021.5, subd. (b)).

[2] In the video, Navarro can be heard telling an officer he was "about to go play basketball." Reyes identified himself to Gault and stated his birth date. Gault asked if they were "just coming from work or something?" Reyes answered, "Yeah, about to go party."

photograph and send it to other users to view for a short period of time and "then the photograph goes away." The application has a feature called "Snapchat Story," which allows a user to share information with the user's "friends" on Snapchat.

Holcombe extracted data showing a Snapchat story had been posted by a user called "Meatball" on September 2, 2016, the day before the traffic stop, at 8:27 p.m. The text of this Snapchat story read, "Glock 17 with a 50 attached." The Snapchat story originally included a photograph, but the photo had been deleted.[3] Holcombe determined that this Snapchat story had been viewed on Reyes's phone about an hour and a half after it was posted.

Prior Conduct

On March 9, 2016, Napa Police Officer Thomas Keener found Reyes with two semiautomatic .45-caliber handguns in his car. The firearms were in a tan nylon gun case on the rear passenger floorboard of Reyes's car. There were magazines in the firearms, but there was no ammunition in the magazines or in the firearms. On August 16, 2016, Reyes was convicted of possessing the firearms found in his car.

The parties stipulated Reyes was previously convicted of a felony for purposes of count 3 (possession of a firearm by a felon).

*Defense*

Lucy Reyes is Reyes's sister. She lived with their mother in Napa, and Reyes lived with them until he was arrested. The day of the traffic stop, Lucy and their mother picked up Reyes from work between noon and 1:00 p.m., and they all went home. Around 4:00 p.m., Lucy, Reyes, and their mother drove to Richmond, where Reyes was

---

[3] In cross-examination, Holcombe explained the Snapchat application itself deletes photographs. He testified, "[T]he original concept behind Snapchat was so you would send a picture, the person you were sending it to would view it for a short amount of time but wouldn't be able to . . . retain it in any way." Holcombe also explained that this "story" posted by the user called "Meatball" would have been seen by all of that user's "friends" on Snapchat. So it was not a direct message to Reyes.

dropped off at his young cousin's house for a visit, and Lucy and their mother went to a nail shop.

Navarro is Reyes's cousin, but he was not the cousin Reyes was visiting, and Navarro did not live at the house where Reyes was dropped off. According to Lucy, Reyes and Navarro sometimes hung out, but "it wasn't very common." She had never seen Reyes with the orange backpack found in Navarro's car. Lucy identified the lunch pail observed on Reyes's lap as his usual lunch bag. She testified Reyes did not have any bag with him when they dropped him off at his cousin's house. She thought Reyes left his lunch bag in Navarro's car a few weeks earlier.

Reyes did not testify. The parties stipulated that the car stopped by the police was registered to Navarro.

*Verdict and Sentence*

The jury found Reyes guilty of counts 2 (receiving a large-capacity magazine) and 3 (possession of a firearm by a felon). In a subsequent court trial, the on-bail enhancement allegation was found to be true.

The trial court sentenced Reyes to three years, four months in state prison.

**DISCUSSION**

We address Reyes's three claims of error in the order he raises them.

A.     *Admitting Snapchat Evidence*

Reyes contends the trial court erred in admitting evidence of the Snapchat story found on his cell phone. We disagree.

1.     Procedural Background

Before trial, defense counsel objected to admission of the Snapchat evidence, arguing it was "minimally probative" and required the jury "to make some assumptions." The prosecutor responded that the gun found in Navarro's car in this case was a Glock 17 with a 50-round drum attached, and the Snapchat story at issue included text that read, "Glock 17 with a 50 attached." The prosecutor argued evidence that Reyes received and viewed a Snapchat story with a description of a gun and magazine that matched the gun and magazine found near Reyes the very next day was probative of whether Reyes had

4

knowledge "of the gun at his feet" in Navarro's car. Finding it had probative value, the trial court admitted evidence of the Snapchat story.

2. Analysis

" 'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.)[4] A trial court has wide discretion in determining whether evidence is relevant but lacks discretion to admit irrelevant evidence. (*People v. Carter* (2005) 36 Cal.4th 1114, 1166–1167.)

Here, Reyes's knowledge was an element of both offenses charged. The trial court instructed the jury that the prosecution was required to prove (among other things), for count 2, that "[t]he defendant *knew* that he received the 50 round drum magazine" and "*knew* that the object was a 50 round drum magazine" (CALCRIM No. 2500), and for count 3, that "[t]he defendant *knew* that he possessed the firearm" (CALCRIM No. 2511, italics added).

We see no abuse of discretion in the trial court determining that evidence Reyes received and viewed a Snapchat story referring to a "Glock 17 with a 50 attached" the night before the traffic stop was relevant to Reyes's knowledge. A factfinder reasonably could infer that the Snapchat evidence made it more likely Reyes knew what the 50 round magazine was than if no such evidence had been presented.

Reyes claims the Snapchat story posted by "Meatball" was not relevant to whether he possessed the firearm and large capacity magazine the day after the story was posted and viewed. But the accompanying text and timing of the Snapchat story were enough to infer its relevance. The Snapchat story referenced a "Glock 17 with a 50 attached." The night the Snapchat story was posted, Reyes viewed it, meaning he was a "friend" of "Meatball" on Snapchat and was aware of the story. Reyes was then found the next day in the passenger seat of Navarro's car next to a backpack containing a Glock with a 50-

---

[4] Further undesignated statutory references are to the Evidence Code.

5

round magazine attached, a firearm and magazine matching the description in the text of the Snapchat story. Gault testified the 50-round magazine found in Navarro's car was "pretty unique," a fact that would make it possible for Reyes to claim ignorance about the nature of that item. The Snapchat story was probative of Reyes's knowledge that the item in the backpack was indeed a large capacity magazine.

We also reject Reyes's claim that there was no evidence that he saw the posting. Holcombe testified the Snapchat story was viewed on Reyes's phone. Gault seized the phone from Reyes the next day, and Reyes has never claimed the phone was not his or that it was in someone else's possession on September 2, 2016. Under these circumstances, evidence that the Snapchat story was accessed from Reyes's phone was evidence from which it reasonably could be inferred that Reyes himself saw the story.

Reyes next asserts that there was "no nexus" showing that the photo in the Snapchap story depicted the same type of weapon that was found in Navarro's vehicle. But, as we have discussed, the text of the Snapchat story, "Glock 17 with a 50 attached," describes a firearm and magazine that match the brand of firearm and "pretty unique" magazine that Gault found in the car with Reyes the next day. The text of the Snapchat story alone provided some probative evidence of Reyes's knowledge even though the photograph originally included in the Snapchat story was no longer accessible.

Finally, to the extent Reyes argues the Snapchat evidence was inadmissible under section 352, it was not an abuse of discretion for the trial court to find the evidence more probative than unduly prejudicial. " 'Evidence is substantially more prejudicial than probative . . . [citation] [only] if, broadly stated, it poses an intolerable "risk to the fairness of the proceedings or the reliability of the outcome" [citation.]' [Citation.] . . . The potential for such prejudice is 'decreased' when testimony describing the defendant's uncharged acts is 'no stronger and no more inflammatory than the testimony concerning the charged offenses.' " (*People v. Eubanks* (2011) 53 Cal.4th 110, 144.) In the present case, evidence that Reyes viewed a Snapchat story about a firearm with a "50 attached" posted by a Snapchat "friend" would not be so inflammatory that jurors would be inclined to convict him of the charged offenses without regard to whether he was proven

guilty beyond a reasonable doubt.  The trial court acted within its discretion in finding the Snapchat evidence relevant and admissible.

B.      *Excluding Navarro's Hearsay Statement*

Reyes contends the trial court erred in declining to admit evidence that Navarro told the police that the gun found in his car was his and that he placed it on the passenger side compartment of his car.  Reyes argues this evidence was admissible under section 1230, the exception to the hearsay rule for declarations against penal interest.[5]

"Evidence Code section 1230 provides that the out-of-court declaration of an unavailable witness may be admitted for its truth if the statement, when made, was so far against the declarant's interests, penal or otherwise, that a reasonable person would not have made the statement unless he or she believed it to be true.  ' "The proponent of such evidence must show 'that the declarant is unavailable, that the declaration was against the declarant's penal [or other] interest, and that the declaration was sufficiently reliable to warrant admission despite its hearsay character.' " '  [Citation.]  'The focus of the declaration against interest exception to the hearsay rule is the basic trustworthiness of the declaration.' "  (*People v. Westerfield* (2019) 6 Cal.5th 632, 704.)

Here, it is undisputed that Officer Gault executed a search warrant of Navarro's home on September 21, 2016, and that, during the search, Navarro admitted to Gault that the firearm found in his car was his.  The trial court ruled Navarro's statement was not admissible under section 1230 because it was unreliable.  We conclude this was an abuse of discretion.

---

[5] Section 1230 provides, "Evidence of a statement by a declarant having sufficient knowledge of the subject is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and the statement, when made, was so far contrary to the declarant's pecuniary or proprietary interest, or so far subjected him to the risk of civil or criminal liability, or so far tended to render invalid a claim by him against another, or created such a risk of making him an object of hatred, ridicule, or social disgrace in the community, that a reasonable man in his position would not have made the statement unless he believed it to be true."

1.    Procedural Background

In a motion in limine, Reyes sought to admit, pursuant to section 1230, evidence of Navarro's statements made to Gault during the search of his home.  At a hearing on the motion, defense counsel proffered the following evidence:  Navarro told Gault that the gun belonged to him; Navarro said he never claimed it because no one ever asked him if the gun was his; and he said that he put the gun on the passenger side of his car and that Reyes did not know the firearm was there.[6]

The trial court found the proffered statements other than "that the gun belonged to him" were not admissible because they were not against Navarro's penal interest.

The prosecutor argued Navarro's statement that the gun was his was untrustworthy (and, thus, inadmissible) because Navarro was "covering for his cousin who [wa]s already facing three years state prison for a gun possession in Napa" (referring to the March 9, 2016, incident during which Reyes was found with two semiautomatic handguns in his car).[7]  The trial court appeared to agree with the prosecutor, observing the statement was made "after Mr. Navarro has a chance to think about it and weigh does . . . he help out his cousin or not help out his cousin."

At a continued hearing on the issue, defense counsel began to argue, "The reliability test is . . . whether the statement is so much against someone's penal interest that they wouldn't make it unless it were true.  The circumstances under which Mr. Navarro—"

---

[6] Defense counsel's proffer was based on Gault's testimony at the previous joint trial of Navarro and Reyes (which ended in Navarro's conviction and a mistrial for Reyes).  Section 1230 requires a showing that the declarant (in this case Navarro) is "unavailable as a witness."  The trial court found Navarro unavailable for purposes of section 1230 after Navarro invoked his Fifth Amendment privilege against self-incrimination during a section 402 hearing outside the presence of the jury.  Navarro's unavailability as a witness is not in dispute on appeal.

[7] The prosecutor also pointed out that, when Navarro told Gault the gun was his, Navarro was out of custody but Reyes was still in custody and "this case had not even been charged yet, so there [wa]s every reason for him to—to try to take the blame for Mr. Reyes so charges would not even be filed."

8

The court interrupted, "Oh, no, I understand that case, and . . . I mean, the gun was there. . . . [T]hat's why I asked how many people were in the car, so it's going to be Mr. Navarro or it's going to be Mr. Reyes or both that go down for it. So Mr. Navarro, if he wants to help out his cousin who's waiting to be sentenced in Napa on gun charges, gets picked up on this, if he says, It's my gun, only one of them's going to get in trouble, not the other, so I find that to be not necessarily against—so against penal interest. It seems to be more of a question of who's going to take the rap on this thing."

Ultimately, the trial court ruled that Navarro's hearsay statement was not admissible, stating, "I find that Mr. Navarro's supposed confession here . . . is not reliable, and so . . . the statement it was his gun is against penal interest but [I'm] finding it not reliable."

2.  Analysis

" 'In determining whether a statement is truly against interest within the meaning of Evidence Code section 1230, and hence is sufficiently trustworthy to be admissible, the court may take into account not just the words but the circumstances under which they were uttered, the possible motivation of the declarant, and the declarant's relationship to the defendant.' " (*People v. Grimes* (2016) 1 Cal.5th 698, 711.) Our Supreme Court has observed that "assessing trustworthiness ' "requires the court to apply to the peculiar facts of the individual case a broad and deep acquaintance with the ways human beings actually conduct themselves in the circumstances material under the exception." ' " (*People v. Duarte* (2000) 24 Cal.4th 603, 614.)

We review a trial court's ruling under section 1230 for abuse of discretion. (*People v. Westerfield*, *supra*, 6 Cal.5th at p. 704.)

Here, the trial court determined Navarro's statement that the gun was his was a statement against penal interest. It was, in effect, a confession that he possessed the gun. But the court then characterized Navarro's statement as a "supposed confession" and found it unreliable and thus inadmissible, apparently because the court believed Navarro was motivated to confess in the hope that "only one of them[]" would "get in trouble." This is a plausible explanation for why Navarro would confess if he were guilty, but we

9

do not see how these circumstances show Navarro's confession is, therefore, untrustworthy.  We understand the court's reasoning that, if Navarro knew he was guilty of possessing the firearm and he believed at least one of them was going to be convicted of possession of the gun, then he might confess in order to protect Reyes.  We further understand that Navarro might confess even if Reyes and he jointly possessed the gun, in the hope that only one of them (not both of them) would be held liable.  On the record before us, however, we fail to see why Navarro would have confessed to a crime *he did not commit* to protect his cousin.

But even assuming their familial bonds were so strong that Navarro might, in general, be willing to confess to crimes he has not committed only because he wants to protect his cousin, the trial court should have taken into consideration that, *in this case*, Navarro had already been convicted by a jury of the crime he confessed to.  Indeed, it strikes us as unseemly that the prosecutor argued Navarro's confession was unreliable when only months previously he had prosecuted Navarro for possessing the gun at issue, convincing a jury that Navarro committed the crime beyond a reasonable doubt.[8]  Under the circumstances of this case, that Navarro was driving his own car when he was pulled over and the gun was found, that Navarro confessed the gun belonged to him while the police were executing a search warrant of his home only a few weeks after the traffic stop and before charges were filed, and—most important—that there was enough corroborating evidence showing Navarro possessed the gun found in his car that a jury convicted him of the offense, it was an abuse of discretion to determine Navarro's

---

[8] We observe that in the original joint trial of Reyes and Navarro, the same prosecutor elicited testimony from Gault on direct examination that, during the search of Navarro's house on September 21, 2016, Navarro told him, "the firearm was his," "[h]e had found it," and he was "[j]ust keeping it."  (Cf. *Green v. Georgia* (1979) 442 U.S. 95, 97 [in ruling it violated the federal due process clause to exclude evidence of a codefendant's hearsay confession, the court found "substantial reasons existed to assume . . . reliability" of the proffered evidence; "Perhaps most important, the State considered the testimony sufficiently reliable to use it against [the declarant], and to base a sentence of death upon it."].)

confession was insufficiently trustworthy to be admitted under section 1230's hearsay exception for declarations against penal interest. Since the confession was unquestionably against Navarro's penal interest and was not untrustworthy, it was an abuse of discretion not to admit evidence of his statement under section 1230.

The Attorney General responds that there was no error in excluding Navarro's statements because the evidence was not relevant. He argues the evidence could not disprove that Reyes possessed the gun because more than one person may possess something at the same time. This argument is unconvincing. It is, of course, possible for more than one person to possess an item (*People v. Miranda* (2011) 192 Cal.App.4th 398, 410), but that does not mean Navarro's claim that the gun was his was *irrelevant* in this case. Given the circumstances of the traffic stop, it reasonably could be inferred that the gun and magazine were in the possession of at least one, possibly two, but not necessarily two, of the occupants of the car. The jury learned that neither Navarro nor Reyes was the registered owner of the gun. The backpack in which the gun and magazine were found was near the feet of Reyes. To the extent it could be inferred that, between Navarro and Reyes, Reyes was more likely to have been in possession of the gun and magazine because he was physically closer to the backpack and the gun and magazine were readily accessible to him, evidence that Navarro claimed the gun was his would be relevant to counter that inference. Further, defense counsel emphasized in closing argument that Navarro was "yelling" and "being defiant" during the traffic stop while Reyes was nervous but cooperative. Evidence that Navarro later confessed to possessing the gun could be relevant to explain the difference between Navarro's and Reyes's conduct at the traffic stop; it could be argued that Navarro was defiant because he knew he was about to get caught and Reyes was cooperative because he did not know there was contraband in his cousin's car. In short, Navarro's confession was relevant to Reyes's defense even though it is possible for more than one person to possess something, and the jury should have been allowed to consider it.

We further conclude the error in excluding Navarro's confession was prejudicial. In the previous joint trial of Navarro and Reyes, a jury heard Gault's testimony that

11

Navarro said the gun was his and convicted him of possession of the gun, but that jury could not reach a verdict as to Reyes. Under these circumstances, we conclude it is reasonably probable Reyes would have obtained a more favorable result in this trial had Navarro's confession not been excluded.

C. *Admitting Prior Uncharged Conduct*

The prosecution was permitted to present evidence that an officer found Reyes with two semiautomatic handguns in his car in Napa County in March 2016, an incident resulting in Reyes's conviction for possession of the firearms. Reyes argues this evidence should not have been admitted, and we agree.

1. <u>Procedural Background</u>

The prosecution sought to admit evidence of Reyes's prior gun possession to prove knowledge and lack of mistake on the day of the traffic stop. Recognizing "there are scenarios when people get into cars and they have no idea what's in the car," the prosecutor argued at a pretrial hearing that the Napa incident "is allowing the innocent explanation here to be negated by similar unlawful conduct. [¶] So they're [the jurors] going to be presented here with one [scenario] that goes to guilt and an innocent explanation which is I had no idea, and if we don't let them see his prior similar conduct, recent conduct, and his knowledge of firearms . . ., then they're not getting the full picture to make an informed decision."

Defense counsel responded that she could not see how the prosecutor's argument was anything but offering the prior conduct to show propensity or to inflame the jury.

The trial court suggested evidence of the Napa incident was relevant "if you're going to try to show knowledge because there you have only [Reyes] in a car and the guns and the backpack on the passenger floorboard, which seemed to have an awful lot of similarities and showed that this is a pattern of conduct." The court eventually ruled the evidence was admissible.

2. <u>Analysis</u>

"As a general rule, evidence of uncharged crimes is inadmissible to prove the defendant had the propensity or disposition to commit the charged crime. [Citations.]

12

'The reason for this rule is not that such evidence is never relevant; to the contrary, the evidence is excluded because it has too much probative value.' [Citations.] ' "The natural and inevitable tendency" ' is to give excessive weight to the prior conduct and either allow it to bear too strongly on the present charge, or to take the proof of it as justifying a conviction irrespective of guilt of the present charge." (*People v. Hendrix* (2013) 214 Cal.App.4th 216, 238 (*Hendrix*).)

Evidence of prior conduct is admissible, however, when relevant to demonstrate a fact other than character or propensity, "such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident." (§ 1101, subd. (b).)

We review for abuse of discretion a trial court's decision to admit evidence of prior conduct under section 1101, subdivision (b). (*People v. Fuiava* (2012) 53 Cal.4th 622, 667–668.)

Reyes argues evidence of the Napa incident should not have been admitted because it "could only show that he was the kind of person . . . who liked to be around and possess firearms." At trial, the prosecutor argued to the jury in his rebuttal that the Napa incident was relevant to Reyes's knowledge, and the Attorney General similarly asserts the Napa incident was highly relevant to prove Reyes's knowledge, although he offers no explanation for this assertion.[9]

Courts have recognized that a defendant's prior conduct may be relevant to knowledge, but the parties have not directed us to any cases with facts similar to those presented here, and we are not aware of any.

---

[9] The prosecutor argued to the jury that the Napa incident was relevant to Reyes's knowledge as follows: "Did he have knowledge of the gun here? . . . [¶] Let's just review it one more time before you go on your way. His recent history. His recent history with possessing semiautomatic firearms in his car. When you are determining his knowledge, you are allowed to hear that, to hear about his knowledge in the prior case. You use that as knowledge in this case. His recent history, does it point to him not knowing about the gun? Absolutely not. Does it point to him knowing about the gun in this case? It does."

13

*Hendrix*, *supra*, 214 Cal.App.4th 216, which arose in a different factual scenario, provides a helpful discussion. In that case, defendant Hendrix was charged with resisting an executive officer by use of force, and the issue was whether he knew the person he resisted was a police officer. The incident began at night with Hendrix fighting a private security guard, and then security guards in black uniforms and police officers in dark blue uniforms chased him before an officer attempted to detain him. (*Hendrix*, *supra*, 214 Cal.App.4th at pp. 221–222.) The lower court allowed the prosecution to present, as relevant to Hendrix's knowledge and absence of mistake, evidence of two prior incidents in which Hendrix resisted or struggled with a police officer. (*Id*. at pp. 222, 225.) But the Court of Appeal reversed, concluding the prior incidents lacked probative value. (*Id*. at pp. 244, 253.)

The *Hendrix* court explained: "[Hendrix] contends he did not have the requisite knowledge—the knowledge that [the person he resisted] was a police officer—because he was mistaken. . . . [T]o establish knowledge when that element is akin to absence of mistake, *the uncharged events must . . . support the inference that what [Hendrix] learned from the prior experience provided the relevant knowledge in the current offense*." (*Hendrix*, *supra*, 214 Cal.App.4th at pp. 242–243, italics added.) The court reasoned: "[T]he admissibility of the uncharged offenses turns on whether the experiences [Hendrix] gained during those prior incidents prepared him to distinguish between security guards and the police. . . . For example, had the two previous encounters with uniformed police officers involved situations where the police issued commands and used force to detain defendant *after* [Hendrix] had been initially confronted by private security guards, it could be inferred that [he] learned from those experiences that the police become involved after an escalating confrontation with private security personnel, and because [Hendrix] knew that, it was less likely he mistook the police here for security officers. However, the prior incidents here provide no such analogue." (*Id*. at p. 243.)

Here, the relevant "knowledge" issues at trial were whether Reyes knew he possessed the firearm, knew he received the 50 round drum magazine, and knew what the

14

magazine was.  (CALCRIM Nos. 2500 and 2511.)  To find such knowledge, the jury would be required to find Reyes *knew* the firearm and magazine were present in Navarro's car.  Thus, the question is whether the Napa incident could support an inference that the experience Reyes gained "provided the relevant knowledge in the current offense" (*Hendrix*, *supra*, 214 Cal.App.4th at p. 243), where the relevant knowledge is there was a firearm with a loaded 50 round magazine in an orange backpack in Navarro's car.  We do not think such an inference is reasonable.  In the Napa incident of March 2016, Reyes was found with two semiautomatic firearms in his own car.  He was alone in his car, the firearms were not loaded, and they were stored in a nylon case on the rear passenger floorboard.  Nothing about this experience would lead Reyes to know what was in an orange backpack in his cousin's car six months later.  We conclude, therefore, the evidence of the Napa incident lacked probative value.

We have already found that the error in excluding Navarro's hearsay declaration against penal interest was not harmless.  It follows that the combination of erroneously admitting evidence of the Napa incident and erroneously excluding Navarro's hearsay statement was also prejudicial.

## DISPOSITION

The judgment is reversed.

                                                    _____

                                                    Miller, J.

We concur:

_____
Kline, P.J.

_____
Stewart, J.

A152557, *People v. Reyes*

16

Trial Court:  Superior Court of Contra Costa County


Trial Judge:  Hon. Cheryl Mills


Peter F. Goldscheider, under appointment by the Court of Appeal, for Defendant and Appellant


Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Catherine A. Rivlin and Ann P. Wathen Deputy Attorneys General, for Plaintiff and Respondent


A152557, *People v. Reyes*