Filed 12/22/21  P. v. Ellis CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MATTHEW LEE ELLIS,<br><br>        Defendant and Appellant. | A158401<br><br>(Contra Costa County<br>Super. Ct. No. 5-190424-2) |

Defendant Matthew Ellis arranged to purchase a cell phone from Francisco Hernandez for $100 and then drove away without paying.  He was convicted by a jury of a single count of robbery.  Ellis argues that the trial court erred in admitting evidence of his prior conviction for attempted carjacking and in permitting the prosecution to cross-examine him regarding a BB gun that he had in his car at the time of his arrest.  We affirm.

**BACKGROUND**

**The Robbery**

On March 13, 2019, the Contra Costa County District Attorney filed an information charging Ellis with a single count of second degree robbery (Pen. Code, § 211),[1] with a special allegation that he used a deadly weapon, a knife (§ 12022, subd. (b)(1)).  The information also alleged that Ellis had 2010

_____

[1] Further undesignated statutory references are to the Penal Code.

1

convictions for attempted carjacking (§§ 215, subd. (a), 664) and unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a)). (See § 667, subds. (d) & (e); § 667.5, subds. (a) & (b).)

Ellis went to trial in May of 2019, at which the victim of the robbery, Hernandez, testified as follows:

Hernandez listed an LG Stylo 4 cell phone for sale using the app OfferUp, and on February 4, 2019, an OfferUp user named "Brian Splin" contacted Hernandez and offered to purchase the phone. Hernandez and Splin agreed to meet outside Hernandez's house in Antioch.

Later that day, "Splin," whom Hernandez later identified as Ellis, arrived in a black Mitsubishi Montero Sport SUV with his girlfriend Destine Jones in the passenger seat and parked on the street in front of Hernandez's house. Hernandez approached the driver's side window and showed Ellis the phone. The phone's battery was dead, so Hernandez handed Ellis the phone and a charger so that he could plug it into his car.

After Ellis attempted to insert his SIM card into the phone, Hernandez noticed that both Ellis and Jones "started acting very nervous." Ellis began searching the center console with his right hand while holding the phone in his other hand. When Hernandez reached to take the phone back, Ellis turned toward him aggressively, holding a knife with a four or five inch blade in his right hand. Hernandez jumped back and Ellis started the car and drove away, running over Hernandez's foot in the process. Hernandez then called 911 and described the incident. Officer Daniel Harris arrived and took a report.

Afterwards, Hernandez was unable to view any of "Brian Splin's" account activity on OfferUp. However, on February 11, Hernandez used his girlfriend's OfferUp account to look up "Brian Splin" and saw that Splin was

2

offering a Sawzall construction tool for sale.  Hernandez contacted Splin through his girlfriend's OfferUp account and arranged to purchase the tool at a McDonald's in Antioch.  Hernandez then called Officer Harris and told him about the plan to meet Splin at McDonalds.  They went together to McDonald's, and Hernandez identified Ellis and Jones in their car from across the street.

Officer Harris testified that Ellis's vehicle "was in the stalls closest to the McDonald's, and it was backed in with the front of the vehicle . . . pointing away from the parking stall."  Officer Harris parked his vehicle directly in front of Ellis's and then "could see [Ellis's] right shoulder dropping down to the right side towards the center console of the vehicle."  Officer Harris quickly ran to the vehicle's driver's side window, at which point Ellis "sprung back into his seat" and placed his hands on his legs.  Officer Harris detained Ellis and Jones in the rear of his patrol car while he searched Ellis's vehicle, at which point he found the black LG phone that Hernandez had reported stolen.

**The 2010 Attempted Carjacking**

The prosecution moved pursuant to Evidence Code section 1101, subdivision (b) to introduce evidence that Ellis had been convicted of attempted carjacking in 2010 in order to show intent, absence of mistake, and common plan in the charged crime.  Defense counsel opposed the motion.  After hearing argument, the trial court ruled that evidence of the attempted carjacking incident was "relevant to the issue of intent, and if it were to be present, also the issue of lack of mistake," and that the probative value outweighed the potential for prejudice.

The attempted carjacking victim, Marco Santolaya, testified as follows at trial:

3

On April 13, 2010, Santolaya was painting the trim on a garage door on a house in Antioch. His car was parked in the driveway playing music with the keys in the ignition and the trunk open. Ellis walked up to Santolaya and said he was looking for someone at the house who owed him money. Ellis and Santolaya continued talking as Santolaya was painting. Ellis told Santolaya that the battery was low on his phone, and Santolaya offered to let Ellis use the charger inside his car. Ellis got into Santolaya's car, connected his phone, got back out, and continued talking to Santolaya.

Santolaya then heard his trunk slam closed and saw Ellis getting inside his car. Santolaya "scuffled with [Ellis] a little bit," and was able to get into the back of the car. The two then began "fighting for the keys," with Ellis attempting to start the car. Eventually Ellis pinned Santolaya with the car door. Ellis picked up basketball-sized rock and threatened to hit first Santolaya, and then his car with it. Ellis then ran away and Santolaya started his car and followed him. He also called the police, who eventually arrived and arrested Ellis. The parties stipulated that Ellis was later convicted of attempted carjacking in connection with the incident.

With respect to the incident, Ellis testified that he lied to the police and told them that he did not try to steal Santolaya's car, telling them instead that he was simply trying to change the radio station and that Santolaya "misinterpreted" his actions.

The jury was ultimately instructed that:

"If you decide that the defendant previously committed the offense of attempted carjacking, you may, but are not required to, consider that evidence for the limited purpose of deciding whether:

"The defendant acted with the intent to deprive Francisco Hernandez of an LG smart phone permanently or to remove the phone from his possession

4

for so extended a period of time that he would be deprived of a major portion of the value or enjoyment of the property in this case; or

"The defendant's alleged actions in this case were not the result of mistake or accident."

**The BB Gun**

The prosecution also sought to introduce evidence that Officer Harris found a BB gun in Ellis's car at the time of his arrest on February 11. After hearing Officer Harris's testimony at a hearing held under Evidence Code section 402, the trial court ruled that it would exclude evidence of the BB gun in the prosecution's case-in-chief, but would permit cross-examination regarding the BB gun if Ellis chose to testify.

Ellis ultimately did testify, telling the jury that he brought $100 in his car with him to purchase the phone from Hernandez. He further testified that he charged the phone up from 0 percent battery, but was unable to put his SIM card into it because the card was the wrong size. Once the phone turned on, he connected it to Jones's hotspot internet and finished setting up the phone using his Google account. He then entered his SIM card information and transferred his service onto the phone. Ellis testified that he handed two 50-dollar bills to Hernandez, told him "Thank you," put his car into gear, and drove away.

On cross-examination, Ellis admitted that he had the BB gun on the passenger seat of his car on the day he was arrested, and that the BB gun looked "a lot like a real gun."

**The Verdict**

The jury found Ellis guilty on the robbery charge but could not reach a verdict on the deadly weapon enhancement, which the trial court dismissed on the prosecutor's motion.

At sentencing, the trial court imposed the lower term of two years, doubled because of Ellis's strike prior for a total sentence of four years.

Ellis filed a notice of appeal.

## DISCUSSION

Ellis argues (1) that it was error to admit evidence of his 2010 conviction for attempted carjacking, (2) that the prosecution should not have been permitted to cross-examine him regarding the BB gun in his car at the time of his arrest, and (3) that the cumulative effect of these two alleged errors requires reversal.

## I. There Was No Abuse of Discretion In Admitting Evidence of Ellis's Attempted Carjacking Conviction

Evidence of uncharged misconduct is inadmissible to prove a defendant's "conduct on a specified occasion," but is admissible when relevant to prove "some fact . . . other than his or her disposition to commit such an act," such as "motive, opportunity, intent, preparation, plan, knowledge, identity, [or] absence of mistake or accident." (Evid. Code, § 1101, subds. (a) & (b).) Thus, as Justice Simons's treatise succinctly puts it, "[w]hen intent is in dispute, a sufficiently similar prior act is admissible." (Simons, California Evidence Manual (2021) § 6:12.) And "[t]he least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent. (See *People v. Robbins* [(1988)] 45 Cal.3d 867, 880.) '[T]he recurrence of a similar result . . . tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act . . . .' (2 Wigmore, [Evidence] (Chadbourn rev. ed. 1979) § 302, p. 241.) In order to be admissible to prove intent, the uncharged misconduct

6

must be sufficiently similar to support the inference that the defendant ' "probably harbor[ed] the same intent in each instance." [Citations.]' (*People v. Robbins, supra*, 45 Cal.3d [at p.] 879.)" (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402.)

We "review for abuse of discretion a trial court's decision to admit evidence of prior conduct under [Evidence Code] section 1101, subdivision (b)." (*People v. Reyes* (2019) 35 Cal.App.5th 538, 550.) And easily find no such abuse here.

In both the charged and uncharged incidents, Ellis initiated an interaction with the victim for an ostensibly legitimate purpose—in the carjacking incident, Ellis purported to be looking for someone at the home Santolaya was painting, and then claimed to need to charge his phone using Santolaya's car; in the charged offense, Ellis set up a legitimate transaction to purchase a cell phone. In both incidents, Ellis disarmed the victim through several minutes of friendly interaction, then attempted to take the property in question by force and by surprise—in each case, by driving away. Finally, after each incident Ellis denied any wrongdoing by arguing that his actions were innocent and had been misinterpreted. We conclude that the trial court did not abuse its discretion in concluding that the incidents were sufficiently similar to permit the inference that Ellis acted with the requisite criminal intent during the charged incident and that the robbery was not the result of mistake or accident.

Ellis argues that because the crime of carjacking requires only that the defendant intend to *temporarily* deprive the victim of possession of the vehicle, whereas robbery requires an intent to *permanently* deprive the victim of property, evidence of the carjacking incident could not have been relevant

to prove Ellis's intent with respect to the charged robbery. (See CALCRIM No. 1600 [robbery requires intent to "deprive the owner of the property permanently/ [or] to remove the property from the owner's possession for so extended a period of time that the owner would be deprived of a major portion of the value or enjoyment of the property"], CALCRIM No. 1650 [carjacking requires intent "to deprive the other person of possession of the vehicle either temporarily or permanently"].) But the authorities cited by Ellis have nothing to do with Evidence Code section 1101, and merely note the differing intent requirements while comparing the elements of carjacking and other crimes in other contexts. (See *People v. Marquez* (2007) 152 Cal.App.4th 1064, 1067–1068 [attempted grand theft auto is not a lesser included offense of attempted carjacking under the elements test]; *People v. Montoya* (2004) 33 Cal.4th 1031, 1035 [unlawful taking of a vehicle not a lesser included offense of carjacking]; *People v. Scott* (2009) 179 Cal.App.4th 920, 931 [trial court not required to strike one of two convictions for robbery and carjacking arising from same incident for purposes of the Three Strikes law].) But we are not engaged in an abstract comparison of the elements of carjacking and robbery, but rather comparing the facts of Ellis's 2010 attempted carjacking conviction with the facts of the charged offense to see if the former sheds light on the latter. The trial court did not abuse its discretion in concluding that it does, for the reasons discussed above.

Ellis also argues that the trial court admitted evidence of the carjacking incident to prove lack of mistake on the part of the *victim*, but Evidence Code section 1101, subdivision (b) only permits the evidence to be admitted to show lack of mistake on the part of the *defendant*. Ellis cites no authority supporting this narrow reading, nor is there any in the text of the

statute, which provides that the evidence is admissible to show "absence of mistake or accident." (Evid. Code, § 1101, subd. (b).)

In any event, the evidence was introduced in part to show lack of mistake by Ellis. His testimony and defense at trial was that he had paid Hernandez, and the prior carjacking incident was relevant to determine whether that was a mistake, either on Ellis's part, believing that he had paid Hernandez, or on Hernandez's part, believing that he had not been paid. And the prosecutor explained in closing argument that the jury was "allowed to use [the attempted carjacking incident] to assess whether there was just some misunderstanding and whether Defendant thought that he paid him" and "whether there was just some sort of mistake or misunderstanding."

In short, the trial court did not abuse its discretion in admitting evidence of the 2010 attempted carjacking under Evidence Code section 1101, subdivision (b).

## II. The Trial Court Did Not Err In Admitting Evidence that Ellis Had a BB Gun at the Time of His Arrest, and Any Error Was Harmless

Ellis's second argument is that the trial court erred in permitting the prosecutor to cross-examine him regarding the BB gun in his car at the time of his arrest, both because "[e]vidence a defendant possessed weapons that were not used to commit a crime is inadmissible to show the defendant committed the crime," (*People v. Abel* (2012) 53 Cal.4th 891, 928), and because the evidence was "not relevant to anything." We review the trial court's rulings on the admissibility of evidence for abuse of discretion. (*People v. Morales* (2020) 10 Cal.5th 76, 97.) And find none.

To begin, we disagree that the presence of the BB gun in Ellis's car when he was arrested was introduced simply to show that Ellis committed

9

the charged crime. And it was not irrelevant. The evidence showed that about a week after the charged incident, Ellis again arranged a transaction through the app OfferUp, again using an account under the name of "Brian Splin." He arrived at McDonald's for the transaction, again with Jones, and parked his car facing out of the parking spot, positioning himself to drive away quickly. He had a BB gun within reach underneath Jones on the front seat—a gun that Ellis conceded looked like a real gun. Officer Harris testified that as he approached Ellis's vehicle, Ellis reached toward where the gun was located. The prosecution argued to the jury that the gun was relevant because Ellis "brought it to a proposed second transaction," and that it explained why the police did not recover the knife when they arrested Ellis, because he had "upgraded his tool." It was for the jury to assess the persuasiveness of this comparison, but the trial court did not abuse its discretion in concluding that the charged incident and the circumstances of Ellis's arrest were sufficiently similar to permit the jury to make inferences about Ellis's intent based on the presence of the BB gun at the time of his arrest.

In any event, Ellis has not demonstrated a reasonable probability of a different result absent the alleged error. (See *People v. Gonzalez* (2018) 5 Cal.5th 186, 201; *People v. Watson* (1956) 46 Cal.2d 818, 836–837.) Most of the facts of the transaction were not in dispute. Hernandez testified that Ellis drove away without paying him for the phone, while Ellis testified that he handed Hernandez two $50 bills before driving away. After approximately four hours of deliberations, the jury believed Hernandez, whose version of events was corroborated by his call to 911—a recording of which was played for the jury—and, as discussed above, by the evidence of the 2010 carjacking incident. Evidence that there was a BB gun in Ellis's car at the time of his

10

arrest several days later was less important by comparison, and Ellis has failed to demonstrate that the jury would have reached a different result had it not been admitted.

## III. No Cumulative Error

Because we have found no prejudicial error in any respect, Ellis's claim of cumulative error must be rejected.  (See *In re Reno* (2012) 55 Cal.4th 428, 483.)

### DISPOSITION

The judgment is affirmed.

_____

Richman, Acting P. J.


We concur:


_____

Kline, J.*


_____

Miller, J.


*People v. Ellis* (A158401)

   *Assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


12