Filed 1/26/22; Opinion on remand

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>ASHNEEL MANI,<br><br>  Defendant and Appellant. | C088716<br><br>(Super. Ct. No. 18FE006114)<br><br><br>OPINION ON TRANSFER |

  APPEAL from a judgment of the Superior Court of Sacramento County, Kevin R. Culhane, Judge. Affirmed with directions.

  Denise M. Rudasill, under appointment by the Court of Appeal, for Defendant and Appellant.

  Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill, Supervising Deputy Attorney General, Kari Ricci Mueller, Deputy Attorney General, for Plaintiff and Respondent.

On the night of March 29, 2018, defendant broke into the house where his mother and his brother lived. After hearing a loud noise, defendant's brother opened his bedroom door and saw defendant running up the stairs holding a kitchen knife. Scared, defendant's brother went back into his room and locked the door, and defendant's mother called 911. At the time, defendant's brother had a restraining order in place against defendant.

A jury found defendant guilty of first degree residential burglary and willfully disobeying a court order. The jury found true the allegation that a person, other than an accomplice, was present during the burglary. At a bifurcated proceeding, the jury found that defendant had a previous strike conviction. The trial court sentenced defendant to an aggregate term of 13 years.

On appeal, defendant asserted that: (1) the trial court abused its discretion in admitting evidence of prior acts of domestic violence under Evidence Code sections 1109 to prove propensity to commit residential burglary grounded on a theory of intent to steal, (2) the trial court abused its discretion in admitting prior acts evidence under Evidence Code sections 1101, subdivision (b), and 352, (3) the trial court committed instructional error in instructing the jury with a modified version of the Evidence Code section 1109 instruction, CALCRIM No. 852A, because burglary based on an intent to steal theory is assertedly not a crime involving domestic violence, and (4) he was prejudiced by the cumulative effect of these errors.[1]

We previously filed an opinion addressing and rejecting defendant's contentions. Additionally, in our original opinion, we addressed a sentencing error, not raised by the parties, as to the application of Penal Code section 654. The trial court had failed to impose a sentence on count two and then stay execution of that sentence, which, as this

---

[1] Further undesignated statutory references are to the Evidence Code.

court and others have noted, is the proper way to pronounce sentence on counts to which Penal Code section 654 applies. (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1469 (*Alford*)). We ordered the matter remanded for resentencing with directions that the trial court impose a term on count two and then stay execution thereof. We otherwise affirmed.

The California Supreme Court granted review and transferred the matter back to us with directions to vacate our decision and reconsider the cause in light of newly enacted Assembly Bill No. 518 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 441) (A.B. 518). (*People v. Mani* (2021) 69 Cal.App.5th 799 [284 Cal.Rptr.3d 713], review granted December 15, 2021, S271688.) We vacated our decision and both parties filed supplemental briefs following the transfer. (See Cal. Rules of Court, rule 8.200(b).)

Regarding A.B. 518 and Penal Code section 654, previously that section required an act or omission punishable in different ways by different laws to be punished under the law that provided for the longest potential term of imprisonment. A.B. 518 amended Penal Code section 654 to afford sentencing courts the discretion to punish the act or omission under either provision. Upon reconsidering the cause in light of A.B. 518, we again remand the matter for resentencing. However, we now specifically direct that the trial court exercise its newly authorized discretion under A.B. 518 to determine whether to impose and execute sentence on either count one or count two and then, pursuant to Penal Code section 654, impose and stay execution of the sentence on the other count.

As for defendant's original contentions, we conclude the trial court did not abuse its discretion in admitting the prior acts evidence and the modified CALCRIM No. 852A instruction was not erroneous. We reject defendant's contention that residential burglary based on an intent to steal theory was not an act of domestic violence for which the prior acts of domestic violence were admissible under section 1109. We also reject the related contention that the trial court erred in instructing that the prior acts in this case could be used as evidence of propensity to commit the residential burglary charge grounded on a

theft theory. We conclude that breaking into the victims' home with the intent to steal was an act that surely disturbed the peace of the victims. Consequently, given the expanded definition of domestic violence in the Family Code applicable in section 1109, which includes disturbing the peace as a form of abuse, we hold that such a burglary is a crime of domestic violence for purposes of section 1109. Having rejected defendant's claims of error, we necessarily reject his cumulative error contention.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Charges

Defendant was charged with first degree residential burglary (Pen. Code, § 459; count one), willfully disobeying a court order (Pen. Code, § 166, subd. (a)(4); count two), and drawing and exhibiting a deadly weapon in a rude, angry, or threatening manner (Pen. Code, § 417, subd. (a)(1); count three). In connection with count one, it was alleged that a person, other than an accomplice, was present during the burglary (Pen. Code, § 667.5, subd. (c)(21)), and it was further alleged that, in the commission of the burglary, defendant personally used a deadly and dangerous weapon, a knife, within the meaning of Penal Code section 12022, subdivision (b)(1). A prior serious felony and prior strike conviction were also alleged. (§§ 667, subd. (a); 667, subds. (b)-(i), 1170.12).

### Trial Evidence Presented by the Prosecution

Defendant's brother lived in a house with their mother. Defendant's brother had a restraining order in place against defendant. Both defendant's brother and mother had restraining orders against defendant in the past. Defendant's brother testified defendant "always violated the restraining orders" and their mother testified defendant violated restraining orders on a number of occasions.

### The Prior Acts

On April 29, 2016, Officer Luis Canela was dispatched to defendant's mother's house for a family disturbance. Upon his arrival, Canela saw several people outside, including defendant. Defendant told Canela he knew there was a restraining order in

4

place against him. He told Canela he had been invited over to get his bed. Additionally, he said, "his family had software to control his mind."

On March 14, 2017, defendant's brother was at home when defendant came over. Defendant came in, yelling and screaming. Defendant's sister told defendant to leave, and then she called to defendant's brother. Defendant's brother came downstairs and saw defendant sitting in their mother's vehicle. He asked defendant to leave, but defendant just yelled, screamed, and cursed. Defendant's brother told defendant he was not allowed to be at the house and that there was a restraining order in place, and he warned defendant that they would call the authorities. Defendant backed up the vehicle and "came right towards" his brother. Defendant's brother was on the sidewalk, and defendant backed out, turned around, and "plow[ed] right towards" him, accelerating "[p]retty quickly," driving onto the sidewalk. Defendant's brother stepped away, and defendant missed hitting him by a matter of inches. Defendant yelled and screamed at his brother, telling him he did not belong there and accusing him of being the cause of their father's death. Defendant drove away in their mother's vehicle before the police arrived. The incident frightened the brother.

On July 11, 2017, defendant came to the house, knocked or banged on the door, and started yelling. Defendant's mother was home alone. She called 911. There was a restraining order in effect at the time.

Defendant's mother testified that, on January 10, 2018, defendant came to the house, banged on the door, yelled, and cursed. She told defendant she was going to call 911 and she did. Defendant left before the police arrived. Defendant's brother testified he came home and discovered a stereo receiver and speaker were missing from the garage. A pair of the brother's custom running shoes was also missing and a pair of

shoes that belonged to defendant were left behind.[2] The door leading into the garage was damaged. It had been kicked open, the doorjambs were "ripped open," and the locking mechanisms "were off the door." As with the other incidents, there was a restraining order in place at the time.

On January 23, 2018, defendant again violated a restraining order. When his mother came home from work, she saw defendant sitting on the back of her landscaper's truck, which was parked on the street between her house and the neighbor's house. She went into the garage and noticed the door frame and lock were broken. When she asked defendant why he broke into the house, he left without saying anything. She testified she "didn't notice about the stereo . . . until [defendant's brother] came. He said the stereo was missing."

On February 21, 2018, defendant's brother heard defendant banging and yelling at the door of the house at approximately 4:00 a.m. Defendant was there for approximately 10 or 15 minutes before he left. Later in the day, defendant's brother went to work. When he came home in the afternoon, he saw that the garage door had been opened. He had previously pushed a dresser against the door to keep it closed because the lock and door had not been fixed after the last incident. The dresser had been moved and stereo equipment was missing. There was a restraining order in effect at this time as well.

**The Charged Offenses**

On March 29, 2018, defendant's mother and brother were at home. During the night, the brother, who had been asleep in his second-floor bedroom, heard a loud bang at the door that led from the garage into the house. It sounded like the door being kicked in.

---

[2] Defendant's brother was not entirely clear in his trial testimony on which dates he discovered property missing. For instance, discussing his custom running shoes, he testified, "I'm not sure when it was missing, but it was missing in one of the incidences . . . ."

Defendant's brother opened his bedroom door and saw defendant running up the stairs holding a kitchen knife. Defendant was holding the knife in his hand with his arm at a right angle and the blade pointed away from his body. He was on the turn on the first landing of the stairs, approximately six to seven feet away. Defendant was yelling. Defendant's brother was scared and nervous at the sight of defendant.

Defendant's mother, who was on her bed in her bedroom awake, also heard a loud bang. She came out of her bedroom and asked what was happening. Defendant's brother told her to go back inside, that defendant had a knife, and that she should call 911. Although she did not see defendant from her vantage point, she went back in her bedroom and called 911. Defendant's brother went back inside his room and closed and locked the door.

After seven or eight minutes of looking for his pepper spray, defendant's brother found it and slowly opened his bedroom door. Defendant was no longer there. Defendant's brother and mother then went downstairs and outside. By then, a CHP helicopter was overhead.

Police were dispatched at 11:10 p.m. and arrived at the victims' home approximately 5 to 10 minutes later. A neighbor who lived a couple of houses away from defendant's mother and brother testified that his daughter alerted him to the presence of police officers outside. He turned on the light in his backyard and saw a chair cushion move. Thereafter, he told police officers that someone was hiding in his backyard. An officer responded and looked out the sliding glass door. He observed the cushion move and saw someone's hand emerge from underneath the cushion. Another officer released his K-9 partner. The dog found defendant and officers took him into custody. After defendant was detained, one of the officers found a kitchen knife in a bucket near where defendant had been hiding. The knife had a wooden handle and a four-and-a-half-inch blade that was bent in half.

Defendant's brother and mother observed damage to the door connecting the inside of their house to the attached garage. The hinges were "ripped open," the doorjambs were "ripped out," and there was damage to the door itself. Nothing was missing from the house.

**Verdicts and Sentencing**

The jury found defendant guilty of burglary in the first degree (Pen. Code, § 459; count one) and willfully disobeying a court order (Pen. Code, § 166, subd. (a)(4); count two). In connection with count one, the jury found true a special allegation that a person, other than an accomplice, was present during the burglary. (Pen. Code, § 667.5, subd. (c)(21).) The jury found defendant not guilty of drawing and exhibiting a deadly weapon in a rude, angry, or threatening manner.[3] (Pen. Code, § 417, subd. (a)(1); count three.)

At a bifurcated trial, the jury found true the allegation that defendant had previously been convicted of assault with a deadly weapon in violation of Penal Code section 245, subdivision (a)(1).

The trial court sentenced defendant to an aggregate term of 13 years in state prison, calculated as follows: the midterm of four years on count one, doubled because of the strike prior, plus five years on the Penal Code section 667, subdivision (a) enhancement. The court did not impose a sentence on count two, stating it was not doing so because of Penal Code section 654.

---

[3] The Penal Code section 12022, subdivision (b)(1), enhancement allegation was never presented to the jury. At sentencing, the trial court granted the prosecution's motion to dismiss that enhancement.

## DISCUSSION

### I. Prior Acts Evidence

### A. Additional Background

In an in limine motion, the prosecution sought to admit evidence of the prior uncharged acts under section 1109 and as evidence of defendant's intent, knowledge, and motive pursuant to section 1101, subdivision (b).

Defendant sought to exclude that same evidence in an in limine motion. He asserted that, with the exception of one incident, none of the prior uncharged conduct constituted domestic violence because the conduct did not constitute "abuse" as defined in Penal Code section 13700. As for section 1101, subdivision (b), defendant asserted that the evidence was not relevant to intent, motive, or knowledge. Further, regarding the allegations of theft, defendant argued the prosecution could not prove the thefts actually happened and that he was the perpetrator. Defendant also made section 352 objections to the admission of the evidence.

At the in limine hearing, the prosecutor asserted that the prior acts were admissible under section 1101, subdivision (b) because "each have to do with the same house . . . ." The prosecutor emphasized that, on two of the occasions, defendant entered the garage and took items, including a stereo speaker, an amplifier, other stereo equipment, and running shoes. On a third occasion, defendant confronted his brother "and it kind of turns into an assault with a deadly weapon. Ultimately, he leaves with his mother's vehicle, and when the brother comes out to confront him, it turns into a 245(a)(1)." The prosecutor asserted that the prior acts constituted evidence of intent related to the burglary charge.

Defense counsel argued, regarding the January 23, 2018, incident, that there had not been sufficient evidence of identity to support a holding order, and there still was not sufficient evidence of identity for the evidence to be presented at trial. Counsel further asserted there was insufficient proof of identity in connection with the theft of

9

defendant's brother's running shoes. Counsel asserted that presenting evidence on these matters would be distracting, consume undue time, and be prejudicial. Counsel also asserted that the prior acts were insufficiently similar to the charged offenses.

In additional oral argument the following day, the prosecutor asserted that the prior acts contextualized what was going on with the family and with defendant being a family member subject to a restraining order. The prosecutor asserted that there would be sufficient evidence to prove the prior acts, regardless of whether defendant was charged for them, and that they were sufficiently similar. Addressing similarity, the prosecutor again asserted that "it starts with the fact that it's the same location for all these incidences, which is . . . the family home . . . ," and the same victims. Additionally, defendant entered using the same side garage door. And a restraining order was violated in all of the prior incidents; in all but one of incidents the same restraining order was violated as defendant violated during the charged offenses. Further, defendant left the scene before the police arrived.

Defense counsel asserted that prior thefts should not be admissible under section 1109, because that provision addresses prior acts of domestic violence. Acknowledging that the Family Code contains a more expansive definition of abuse, counsel argued the trial court still has discretion to preclude the evidence under section 352. Counsel argued the evidence was potentially prejudicial, lacked probative value to prove defendant's intent when he entered the house, and would consume undue time and confuse the jury. Regarding section 1101, subdivision (b), defense counsel asserted that the similarity of the prior acts was insufficient to warrant admission of the evidence. Counsel further maintained that defendant's violations of prior restraining orders were not relevant to the issue of knowledge because "the issue isn't whether he has knowledge of how restraining orders work, it's whether he had knowledge of this particular restraining order" which counsel stated was issued March 2017.

Addressing section 1109 and the definition of abuse relevant to that section, the court noted that Family Code section 6211 defines domestic violence as abuse, and that Family Code section 6203 contains a definition of abuse. The court further noted that Family Code section 6203 incorporates Family Code section 6320 in its definition of abuse. The court concluded that "these all fit within the definition of domestic violence and abuse as defined in the Family Code, and in the Penal Code . . . . And so it puts the Court in a place to having to analyze them from a 352 perspective." The court also noted that section 1109 allows the admission of prior domestic violence acts as to offenses "involving domestic violence," which is not the same as an offenses "charging domestic violence." The court determined the admission of the evidence was not unduly inflammatory and that the probative value was not outweighed by any prejudicial effect.

As for section 1101, subdivision (b), the court recognized the evidence would be probative of knowledge related to the restraining order. Also, one incident would be probative as to intent to engage in assaultive conduct and the thefts would be probative as to an intent to steal. The court ruled that the incidents involving theft "go to" defendant's intent when he entered the home during the charged event. All the prior events involved violations of a restraining order, and so they "go to count 2," the charged restraining order violation. Again, the court concluded the evidence would not inflame the jury and cause the jurors to use the evidence for an improper purpose.

Ultimately, the trial court granted the prosecution's in limine motion to admit evidence of defendant's prior acts pursuant to sections 1109 and 1101, subdivision (b). At the close of trial, the court instructed the jury on these theories and the purposes for which the jury could consider the evidence.[4]

---

[4] As for section 1109, the court instructed with a modified version of CALCRIM No. 852A, which stated in pertinent part: "*Domestic violence* means abuse committed against a brother or mother of the defendant. [¶] *Abuse* means intentionally or recklessly

11

## B. Principles of Statutory Construction and Standard of Review

"Analysis of the requirements of [the Evidence Code] . . . must begin with the plain language of the statute, giving the words their ordinary and common meaning. [Citation.] 'If the language [of the statute] is unambiguous, the plain meaning controls,' and no further analysis is warranted. [Citations.] When the language allows for more than one reasonable construction, we consider 'such aids as the legislative history of the

---

causing or attempting to cause bodily injury, or placing another person in reasonable fear of imminent serious bodily injury to himself or herself or to someone else, attacking, striking, threatening, battering or, having been restrained from doing so by a valid court order, coming within a specified distance of or disturbing the peace of a named family member. [¶] . . . [¶] If you decide that the defendant committed the uncharged domestic violence, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit domestic violence and, based on that decision, also conclude that the defendant was likely to commit burglary, the violation of a court order, and/or brandishing of a deadly weapon, in the manner alleged in this case. If you conclude that the defendant committed the uncharged domestic violence, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of burglary, violation of a court order, and brandishing of a deadly weapon. The People must still prove each charge beyond a reasonable doubt. [¶] Except as otherwise provided in Instruction 375, do not consider this evidence for any other purpose."

As for section 1101, subdivision (b), the court instructed with CALCRIM No. 375, which stated, in pertinent part: "The People presented evidence that the defendant committed other offenses that were not charged in this case. [¶] . . . [¶] If you decide that the defendant committed the offenses, you may, but are not required to, consider that evidence for the limited purpose of deciding whether: [¶] The defendant acted with the intent to commit theft, Assault with a Deadly Weapon, or Assault with Force Likely to Cause Great Bodily Injury in this case; or [¶] The defendant knew he had an active restraining order when he allegedly acted in this case. [¶] . . . [¶] When considering the evidence in this way, do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime. [¶] Except as otherwise provided in Instruction 852A, do not consider this evidence for any other purpose. [¶] If you conclude that the defendant committed the uncharged offenses, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of Counts One and Two. The People must still prove every charge beyond a reasonable doubt."

12

[statute] and maxims of statutory construction.  In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy.' " (*Riske v. Superior Court* (2016) 6 Cal.App.5th 647, 657.)

We review a challenge to a trial court's decision to admit evidence pursuant to section 1109 for abuse of discretion.  (*People v. Johnson* (2010) 185 Cal.App.4th 520, 531 (*Johnson*).)  Likewise, we review a trial court's section 1101, subdivision (b) ruling for abuse of discretion.  (*People v. Winkler* (2020) 56 Cal.App.5th 1102, 1144 (*Winkler*); *People v. Reyes* (2019) 35 Cal.App.5th 538, 550.)

## C.  Section 1109

### 1.  Defendant's Contentions

Defendant asserts the trial court abused its discretion in admitting the prior acts under section 1109 because the evidence was inadmissible both under that section and under section 352.  Defendant asserts that, with one exception, the acts did not constitute abuse within the meaning of Penal Code section 13700.  According to defendant, the trial court erred by employing the expanded definition of abuse found in Family Code sections 6203 and 6320, which together include behaviors not listed in the Penal Code section 13700 definition of abuse.  He further asserts that some of the evidence was inadmissible because there was insufficient corroboration.  And he asserts that one of the theories under which he was charged with burglary—intent to commit theft—did not constitute an offense involving domestic violence within the meaning of section 1109, and therefore the prior acts of domestic violence were not admissible under that section "to be considered as domestic violence propensity evidence to decide whether [defendant] committed burglary by entering with intent to commit theft."  Defendant also asserts that the evidence was more prejudicial than probative, consumed undue time, confused the issues, and misled the jury, and therefore the trial court abused its discretion under section 352 in admitting the evidence.

13

**2. Definitions of Domestic Violence and Abuse Applicable to Section 1109**

Section 1109, subdivision (a)(1), provides with exceptions not applicable here: "[I]n a criminal action in which the defendant is *accused of an offense involving domestic violence*, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352." (Italics added.)

Regarding the definition of domestic violence, section 1109 provides: " 'Domestic violence' has the meaning set forth in Section 13700 of the Penal Code. Subject to a hearing conducted pursuant to Section 352, which shall include consideration of any corroboration and remoteness in time, *'domestic violence' has the further meaning as set forth in Section 6211 of the Family Code, if the act occurred no more than five years before the charged offense*." (§ 1109, subd. (d)(3), italics added.)  Thus, there are two definitions of domestic violence applicable to section 1109, one in the Penal Code and another in the Family Code.

The Penal Code definition in Penal Code section 13700, subdivision (b), defines "[d]omestic violence" as "*abuse* committed against an adult or a minor who is a spouse, former spouse, cohabitant, former cohabitant, or person with whom the suspect has had a child or is having or has had a dating or engagement relationship."  (Italics added.) Subdivision (a) of section 13700 defines "abuse" as "intentionally or recklessly causing or attempting to cause bodily injury, or placing another person in reasonable apprehension of imminent serious bodily injury to himself or herself, or another."

The Family Code definition of domestic violence is found in a combination of several provisions.  Family Code section 6211, expressly referenced in section 1109, subdivision (d)(3), provides that domestic violence "is *abuse* perpetrated against" persons with specified relationships, including, as applicable here, any "person related by consanguinity or affinity within the second degree." (Fam. Code, § 6211, subd. (f), italics added.)  In section 6203, the Family Code defines *abuse* as any of the following:

14

"(a) (1) To intentionally or recklessly cause or attempt to cause bodily injury.  [¶]  (2) Sexual assault.  [¶]  (3) To place a person in reasonable apprehension of imminent serious bodily injury to that person or to another.  [¶]  (4) *To engage in any behavior that has been or could be enjoined pursuant to Section 6320.*  [¶]  (b) Abuse is not limited to the actual infliction of physical injury or assault."  (Italics added.)

Family Code section 6320, subdivision (a), referenced in subdivision (a)(4) of Family Code section 6211, lists the following behaviors as subject to being enjoined: "molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, credibly impersonating as described in Section 528.5 of the Penal Code, falsely personating as described in Section 529 of the Penal Code, harassing, telephoning, including, but not limited to, making annoying telephone calls as described in Section 653m of the Penal Code, destroying personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or *disturbing the peace of the other party*."  (Italics added.)  " '[T]he plain meaning of the phrase "*disturbing the peace* of the other party" in [Family Code] section 6320' " includes " '*conduct that destroys the mental or emotional calm of the other party*.' "  (*People v. Sorden* (2021) 65 Cal.App.5th 582, 601 (*Sorden*), some italics added, quoting *In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1497 (*Nadkarni*).)  As the *Nadkarni* court reasoned:  "The ordinary meaning of 'disturb' is '[t]o agitate and destroy (quiet, peace, rest); to break up the quiet, tranquility, or rest (of a person, a country, etc.); to stir up, trouble, disquiet.'  [Citation.]  'Peace,' as a condition of the individual, is ordinarily defined as 'freedom from anxiety, disturbance (emotional, mental or spiritual), or inner conflict; calm, tranquility.'  [Citation.]  Thus, the plain meaning of the phrase 'disturbing the peace of the other party' in [Family Code] section 6320 may be properly understood as *conduct that destroys the mental or emotional calm of the other party*."  (*Nadkarni*, at p. 1497, italics added.)

### 3. Analysis

Defendant asserts that the trial court erred by using a definition of abuse found in the Family Code to apply to other acts of domestic violence in section 1109. He asserts that the only definition of abuse applicable for purposes of section 1109 is the definition found in Penal Code section 13700. According to defendant, section 1109's invocation of Family Code section 6211 inappropriately served to expand the classes of people who could be deemed victims of a prior act of domestic violence within the meaning of section 1109. Defendant asserts that section 1109 does not state that the Family Code definition of abuse applies when admitting evidence under section 1109.

We reject defendant's construction of section 1109. As stated *ante*, section 1109, subdivision (d)(3), provides, " 'Domestic violence' has the meaning set forth in Section 13700 of the Penal Code," but further states, "Subject to a hearing conducted pursuant to Section 352, which shall include consideration of any corroboration and remoteness in time, *'domestic violence' has the further meaning as set forth in Section 6211 of the Family Code*, if the act occurred no more than five years before the charged offense." (Italics added.) This plain and unambiguous language incorporates the Family Code section 6211 definition of abuse for purposes of defining "domestic violence" within the scope of section 1109, subject to the five-year limitation and a section 352 analysis. Nothing in section 1109 limits the scope of subdivision (d)(3) in the manner asserted by defendant.

Family Code section 6211 defines " '[d]omestic violence' " as "abuse perpetrated against" persons with specified relationships. Family Code section 6203, as is pertinent here, defines abuse as "*any behavior* that has been or could be enjoined pursuant to" Family Code section 6320. (Italics added.) Family Code section 6320, subdivision (a) includes disturbing the peace among the list of behaviors. We conclude that the plain and unambiguous language of section 1109, subdivision (d)(3), incorporates, in addition to Penal Code section 13700, the Family Code definition of abuse—including the behaviors

listed in Family Code section 6230, subdivision (a)(4)—provided that the events occurred within five years of the charged offense. Thus, encompassed within the meaning of "offense involving domestic violence" in section 1109 is an offense involving conduct constituting disturbing the peace of the victim.

Defendant misplaces reliance on *People v. Zavala* (2005) 130 Cal.App.4th 758 (*Zavala*). In *Zavala*, the defendant was charged with stalking and asserted that the trial court erred in instructing the jury on the use of prior violent acts evidence to prove that offense. (*Id*. at pp. 761, 770.) The defendant "note[d] that . . . .section 1109 is a limited exception to the general ban (under Evid. Code, § 1101) against using prior acts to infer the defendant's disposition to commit the charged acts, and permits such evidence as the basis for such inference if the defendant is accused of a crime involving domestic violence *within the meaning of section 13700*." (*Id*. at p. 770, italics added.) The defendant in *Zavala* further asserted that "to the extent the stalking offense does *not* require that the threat induced the victim to fear great bodily injury or death, stalking is concomitantly *not* a crime of domestic violence (as defined by [Penal Code] section 13700) and therefore the prior violent acts evidence may not be used by the jury to infer Zavala had a disposition the type of which made it likely he committed the stalking offense." (*Id*. at pp. 770-771.) The Fourth Appellate District, Division One, without further analysis or explanation, "agree[d] it was error to give the [section 1109] instruction as to the count charging Zavala with stalking." (*Id*. at p. 771.)

Approximately five years later, the Second Appellate District, Division Six, decided *People v. Ogle* (2010) 185 Cal.App.4th 1138 (*Ogle*), upon which the Attorney General relies. The appellate court in *Ogle* declined to follow *Zavala* and essentially rejected the same arguments defendant makes here.

In *Ogle*, the defendant asserted that his prior conviction for stalking should not have been admitted to prove his propensity to commit the charged criminal threats because stalking was not domestic violence within the meaning of section 1109. (*Ogle,*

17

*supra*, 185 Cal.App.4th at p. 1142.)  Rejecting the argument, the *Ogle* court held that "[s]talking is an act of domestic violence within the meaning of section 1109 as defined by Family Code section 6211, and is therefore admissible to prove propensity in a prosecution for domestic violence."  (*Id*. at pp. 1142-1143.)  The court expressly declined to follow the contrary holding in *Zavala*, reasoning that the *Zavala* court's analysis "overlooks Family Code section 6211, which defines domestic violence more broadly . . . ."  (*Id*. at pp. 1143-1144.)  The *Ogle* court concluded that section 1109 "applies if the offense falls within the Family Code definition of domestic violence *even if it does not fall within the more restrictive Penal Code definition*."  (*Ogle*, at p. 1144, italics added.)

Defendant asserts that *Ogle* was wrongly decided based on his arguments concerning the plain language of section 1109, the legislative history behind its amendment, and based on a case on which the *Ogle* court relied.  We disagree with defendant and instead agree with the court's analysis in *Ogle*.

Defendant asserts that *Ogle* was wrongly decided because, according to defendant, a case on which that court relied, *People v. Dallas* (2008) 165 Cal.App.4th 940 (*Dallas*), "did not find that the definition of 'abuse' should be expanded in this manner."  In *Ogle*, the court relied on *Dallas* in stating that section 1109 applied "if the offense falls within the Family Code definition of domestic violence even if it does not fall within the more restrictive Penal Code definition."  (*Ogle, supra*, 185 Cal.App.4th at p. 1144, citing *Dallas*, at p. 952.)

In *Dallas*, the defendant was charged with child abuse of the son of his girlfriend with whom he resided.  (*Dallas, supra*, 165 Cal.App.4th at p. 942.)  The trial court admitted evidence of prior domestic violence against a former girlfriend.  (*Id*. at pp. 942, 946-949.)  The defendant argued that, because section 1109 does not expressly provide that acts of domestic violence may be introduced in a child abuse prosecution, it was improper to do so.  (*Dallas*, at p. 949)  The *Dallas* court noted that, while Penal Code

section 13700 may not include a child within the definition of cohabitant, a child could be a cohabitant under Family Code section 6209, which is expressly referenced in Family Code section 6211, subdivision (b). (*Dallas*, at p. 953.) Thus, for purposes of section 1109, the child abuse charge was a domestic violence offense as defined in Family Code section 6211. (*Dallas*, at p. 953.) As stated by the *Ogle* court, "[i]n *Dallas*, abuse of a baby was admissible pursuant to section 1109 because it was domestic violence within the meaning of Family Code section 6211, although it was not domestic violence within the meaning of Penal Code section 13700, which did not include the baby in its narrower class of protected victims." (*Ogle, supra*, 185 Cal.App.4th at p. 1144; see *Dallas*, at pp. 951-957.)

Defendant is correct that the court in *Dallas* did not expressly hold that definitions of abuse found in sections 6203 and 6320 are incorporated into section 1109. However, the *Dallas* court did hold that section 6211, defining domestic violence more broadly than the Penal Code, incorporated other provisions of the Family Code into the ambit of section 1109 (albeit a section of the Family Code expressly referenced in section 6211 pertaining to the nature of the victim, Family Code section 6209). (*Dallas, supra*, 165 Cal.App.4th at p. 953.) Thus, the *Ogle* court did not misplace reliance on *Dallas* for the specific proposition that section 1109 incorporates the definitions of abuse found in sections 6203 and 6320. Instead, the *Ogle* court reasonably relied on the reasoning in *Dallas* for the premise that sections 1109 and 6211 incorporate other provisions from the Family Code which are broader than Penal Code section 13700. We agree with that reasoning.

Moreover, apart from *Dallas*, the *Ogle* court also relied on the plain meaning of the language of section 1109 in reaching its determination. (*Ogle, supra*, 185 Cal.App.4th at pp. 1143-1145.) Again, so do we. As discussed *ante*, the plain language is clear. Indeed, this is not the first time this court has agreed with *Ogle*'s reasoning recognizing that for purposes of section 1109, the Family Code definition of domestic

violence is broader than the Penal Code definition. (See *People v. Kovacich* (2011) 201 Cal.App.4th 863, 893-895 [evidence defendant violently kicked the family dog in the presence of his wife and children was an act of abuse within the meaning of Family Code section 6203; "[t]his abuse was committed against his wife and children, who witnessed the violent assault, and amounted to 'domestic violence' within the meaning of Family Code section 6211"].)

We do disagree with the court in *Ogle* on one thing. It criticized the *Zavala* court for "overlook[ing]" Family Code section 6211. (*Ogle, supra*, 185 Cal.App.4th at p. 1144.) We do not think that is what happened. The *Zavala* appeal was decided in June 2005. This was only six months after the effective date of the amendment to subdivision (d)(3) of section 1109 that incorporated the Family Code's definition of domestic violence. (Stats. 2004, ch. 116, § 1.) We take judicial notice of information on the Fourth Appellate District, Division One's online docket indicating that judgment was entered in the trial court in *Zavala* on April 19, 2004. (§ 452, subd. (d) [judicial notice may be taken of records of any court of this state]; *Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 882 ["The court may in its discretion take judicial notice of any court record"].) Thus, the Family Code definition of domestic violence would not have been incorporated into section 1109 at the time of the trial in *Zavala*.[5] Accordingly, for this additional reason, we reject defendant's argument based on *Zavala*.

The defendant in *Ogle* also made the argument defendant makes here, that "the Family Code reference in section 1109's definition of domestic violence was intended only to bring abuse of children of domestic partners within the statute and that it was not

---

[5] Neither party here discussed this important aspect of the procedural history in *Zavala*, *supra*, 130 Cal.App.4th 758. Nor, to our knowledge, has any published appellate decision discussed this either.

really intended to incorporate all forms of abuse that fall within the broader Family Code definition." (*Ogle, supra*, 185 Cal.App.4th at p. 1144.) We reject that argument, as did the *Ogle* court. (*Ibid*.) Section 1109 clearly and unambiguously incorporates the Family Code definitions of domestic violence and abuse without the limitation urged by defendant.[6] (*Ogle*, at p. 1144.)

As was the case in *Ogle* (*Ogle, supra*, 185 Cal.App.4th at p. 1143), the Family Code definitions of domestic violence and abuse apply here because defendant's prior conduct at issue occurred within five years of trial. (§ 1109, subd. (d)(3).) Consequently, the prior incidents at issue here qualify as domestic violence within the meaning of section 1109, as defined in Family Code section 6211. In each of the instances, a restraining order was in place against defendant. In each instance, defendant came to the house where defendant's mother and brother lived in violation of the effective restraining order and committed acts which, at the least, would constitute conduct disturbing the peace of the victims. (Fam. Code, §§ 6211, 6203, 6320.) As noted, disturbing the peace for purposes of this Family Code provision means "*conduct that destroys the mental or emotional calm of the other party*.' " (*Sorden, supra*, 65 Cal.App.5th at p. 601; *Nadkarni, supra,* 173 Cal.App.4th at p. 1497.)

This brings us to the question of whether the prior acts evidence was admissible to prove the burglary count, an issue not addressed in any published case. The prosecutor advanced two theories as to defendant's intent when he broke into the family home

---

[6] Defendant makes this argument based, in part, on legislative history purportedly suggesting the Legislature's sole intent in adding the Family Code provisions to section 1109 was to make acts of domestic violence against an adult and prior child abuse admissible as propensity evidence in a child abuse prosecution. Because we arrive at our conclusion based on the plain and unambiguous language of the statute, we see no reason to address the specific legislative history upon which defendant relies.

21

during the charged event:  intent to commit aggravated assault and intent to steal. Because section 1109 allows prior acts of domestic violence when a defendant is accused of " 'an offense involving domestic violence,' " the issue defendant raises is whether a burglary based on an intent to steal theory is an offense involving domestic violence. Defendant argues it is not, because such conduct does not constitute abuse under either the Penal Code or Family Code definitions.  We disagree.

The Attorney General relies on *People v. James* (2010) 191 Cal.App.4th 478 (*James*), a case that supports only a determination that burglary based on entry with the intent to commit an aggravated assault or threat to cause injury is a crime " 'involving domestic violence' " within the meaning section 1109.  There, the defendant broke into his former girlfriend's home and made threatening statements towards her, placing her in reasonable apprehension of imminent serious bodily injury.  (*James*, at p. 483.)  Noting the Penal Code section 13700, subdivision (a) definition of abuse includes " 'intentionally or recklessly causing or attempting to cause bodily injury, or placing another person in reasonable apprehension of imminent serious bodily injury to himself or herself, or another,' " the *James* court reasoned that, under the circumstances of that case, burglary was an act of domestic violence for purposes of Penal Code section 13700, subdivision (a).  (*James*, at pp. 482-483.)  In this regard, the court held:  "Although the crime of burglary is not a crime of domestic violence on its face, the trial court properly found that under the facts of the case, the burglary was a qualifying offense allowing the People to seek to present propensity evidence under section 1109."  (*James*, at p. 484.)

Here, defendant entered into the house his mother and brother shared in the middle of the night while they were in their beds.  He was then seen running up the stairs holding a kitchen knife.  For purposes of admissibility of the evidence, there was sufficient evidence to support the conclusion that defendant's alleged actions would have placed his brother "in reasonable apprehension of imminent serious bodily injury to himself or . . . another."  (Pen. Code, § 13700, subd. (a).)  Thus, under the reasoning of *James*, the

evidence was admissible under section 1109 as to the aggravated assault theory of burglary.  But *James* does not address the issue presented by defendant's challenge here.

Defendant argues that the prior acts were not admissible pursuant to section 1109, under any definition of abuse, to prove defendant entered into the house with the intent to commit theft.  Thus, according to defendant, the trial court erred in admitting his prior acts as domestic violence propensity evidence to prove burglary on a theft theory.  We disagree.

On this point, it is important to note that section 1109 merely requires that the criminal action in which the defendant is accused be one "*involving* domestic violence." (§ 1109, subd. (a)(1), italics added; see *People v. Megown* (2018) 28 Cal.App.5th 157, 166 [noting that § 1109 allows evidence of prior acts of domestic violence in a criminal action in which the defendant is " 'accused of an offense *involving* domestic violence' "].)  Here, it cannot be seriously argued that breaking into the family home and stealing property — permanently depriving the defendant's brother and mother of the use or benefit of that property — is not behavior disturbing their peace.  Thus, under the circumstances of the prior incidents involving theft here, residential burglary grounded on a theft theory was an "offense *involving* domestic violence."  (§ 1109, subd. (a)(1), italics added.)

### D.  Section 1101, Subdivision (b)

#### 1.  Additional Background and Defendant's Contentions

The trial court ruled that the prior act evidence would be admissible under section 1101, subdivision (b) for "the targeted purposes" in the instructions.  The instructions listed the following purposes for which the jury could consider the evidence:  intent to commit theft, assault with a deadly weapon or assault with force likely to cause great bodily injury, and that defendant knew he had an active restraining order when he allegedly acted in this case.  (See fn. 4, *ante*.)

Defendant asserts that the trial court abused its discretion in admitting the prior acts under section 1101, subdivision (b). He asserts that this evidence was not relevant to prove he entered the home with the intent to steal property or commit an aggravated assault, or to prove he had knowledge of the restraining order in effect at the relevant time. This is so, according to defendant, because the prior incidents were insufficiently similar to be probative, and further that the prior acts of alleged theft were not established by a preponderance of the evidence. He also asserts that this evidence was inadmissible on section 352 grounds. Again, we disagree.

## 2. Analysis

Section 1101, subdivision (a) generally prohibits evidence of character to prove conduct. Apart from the exception under section 1109, subdivision (b) of section 1101 provides that "evidence of a prior uncharged act may also be admissible to prove a disputed material fact—other than a criminal disposition—such as motive, intent, knowledge, or the absence of mistake or accident." (*People v. Wang* (2020) 46 Cal.App.5th 1055, 1075.)

Our high court has stated: "The least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent. . . . In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to support the inference that the defendant ' "probably harbor[ed] the same intent in each instance." ' " (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402 (*Ewoldt*).) As our high court has explained, "the recurrence of a similar result tends to negate an innocent mental state and tends to establish the presence of the normal criminal intent." (*People v. Jones* (2011) 51 Cal.4th 346, 371; see also *Ewoldt*, at p. 402.) "[T]he similarities between the two events must be substantial enough to have probative value." (*Winkler*, *supra*, 56 Cal.App.5th at p. 1145.)

We conclude the prior acts were sufficiently similar for admissibility under section 1101, subdivision (b). (See generally *People v. Fruits* (2016) 247 Cal.App.4th 188, 203-

204 (*Fruits*) [evidence of prior threats the defendant made against his mother, and other prior acts of violence against her were similar to the charged offense involving his mother and thus highly probative]; *People v. Hoover* (2000) 77 Cal.App.4th 1020, 1029 (*Hoover*) [§ 1109 evidence relevant to domestic violence was admissible in view of the fact that the evidence involved the defendant's history of similar conduct against the same victim and the evidence was not unduly inflammatory].)  Defendant emphasizes differences between the prior acts and the charged offenses such as the time of day and the fact that he previously only entered the attached garage and not the residence itself.  He also asserts that, during the prior acts, he did not carry a weapon as alleged regarding the charged crimes.  We conclude that these differences were insignificant compared to the fact that he victimized the same people, at the same place, employed a similar means of entry causing similar damage, repeatedly violated a restraining order and, with the exception of one incident, left the scene before the police arrived.  In the context of this case, these similarities were substantial enough to have sufficient probative value.

Regarding the charged burglary count, as stated *ante*, the prosecution proceeded on the theories that, when defendant entered the house, his intent was to commit aggravated assault or theft.  The circumstantial evidence pointed to defendant as the person who stole items of property from the home on at least two prior occasions.  Additionally, in another prior act, defendant went to the house and attempted to assault his brother with a motor vehicle.  These prior acts were relevant to defendant's intent when he entered into the house on March 29, 2018.[7]

---

[7] Without explanation that appears on the record, the trial court apparently ruled the prior acts evidence was not admissible pursuant to section 1101, subdivision (b), to prove defendant's motive.  However, we think it important to point out that defendant's prior acts involving the same victims could also be relevant and admissible to prove motive pursuant to section 1101, subdivision (b) in that the acts showed defendant's ongoing animus as to his brother and mother.  (See, e.g., *Fruits, supra*, 247 Cal.App.4th at p. 204 [prior threats and acts of violence against a victim are admissible under § 1101, subd. (b),

The evidence of defendant's violation of prior restraining orders by going to the residence where his mother and brother lived was also relevant to defendant's knowledge concerning the existence of the restraining order and its parameters. Defendant asserts that knowledge was not a material issue in the case because he was previously served with the restraining order violated here in open court, and thus his knowledge of that restraining order is presumed. However, "By pleading not guilty . . . defendant placed all elements of the crime in dispute." (*People v. Hendrix* (2013) 214 Cal.App.4th 216, 239-240 (*Hendrix*).) And the prosecution had latitude in the manner in which it chose to prove its case. In other words, "the prosecutor is not required 'to present its case in the manner preferred by the defense.' "[8] (*People v. Clark* (2011) 52 Cal.4th 856, 894, quoting *People*

---

to establish motive in a prosecution involving violence or the threat of violence against the same victim; "[a] defendant is not entitled to have the jury determine his guilt or innocence on a false presentation that his and the victim's relationship was peaceful and friendly"]; *People v. Guilford* (2014) 228 Cal.App.4th 651, 661-662 [" 'Where a defendant is charged with a violent crime and has or had a previous relationship with a victim, prior assaults upon the same victim, when offered on disputed issues, e.g., identity, intent, *motive*, etcetera, are admissible based solely upon the consideration of identical perpetrator and victim without resort to a "distinctive modus operandi" analysis of other factors,' " (Italics added)]; *People v. Linkenauger* (1995) 32 Cal.App.4th 1603, 1610 [evidence tending to establish prior quarrels, antagonism and enmity between a defendant and the victim is properly admissible to show motive under § 1101, subd. (b)]; *People v. Zack* (1986) 184 Cal.App.3d 409, 415 [same].) Apart from the intent to commit aggravated assault theory, residential burglary when someone is home is a violent felony offense. (Pen. Code, § 667.5, subd. (c)(21)).

[8] Defendant cites to pages of the reporter's transcript to support his contention of presumptive knowledge that there was a restraining order in effect and thus knowledge was not a material issue in the case. However, the pages to which he cites merely memorialize a colloquy in which defendant's trial counsel represented that "[w]e need to enter a stipulation that [defendant] knew there was a restraining order against his brother. He was served with it. Ultimately, all that has to happen for him to be -- to have presumptive knowledge is to be served with it, which he was in open court. . . . So I don't think that's an issue -- a material issue here . . . ." The statements of counsel are not evidence. (*People v. Hamilton* (2009) 45 Cal.4th 863, 928-929; accord, *People v. Saelee* (2018) 28 Cal.App.5th 744, 755; CALCRIM No. 222.) The only stipulation read

26

*v. Salcido* (2008) 44 Cal.4th 93, 150.) Moreover, the prior acts evidence related to restraining order violations was also relevant to demonstrate defendant's willfulness in violating the existing restraining order and the absence of mistake or accident. (See *Hendrix*, at pp. 237-246 [discussing the admissibility of other act evidence to establish knowledge and absence of mistake or accident].)[9]

Defendant also argues that "the first foundational requirement for admitting prior bad act evidence, pursuant to . . . section 1101, subdivision (b) is that it must be established by a preponderance of evidence that the prior bad act actually occurred." Defendant is correct. The trial court has a gatekeeping function under section 403, subdivision (a) to determine by a preponderance of the evidence the existence of the prior uncharged act and defendant's connection to it before the prior misconduct can be deemed admissible. (*Winkler*, *supra*, 56 Cal.App.5th at p. 1144.) Thus, in the context of

---

to the jury addressed a restraining order that expired on March 16, 2018. This was not the restraining order defendant stood accused of violating in count two. A certified copy of the July 5, 2016, restraining order that defendant was accused of, and found guilty of, violating in count two was admitted into evidence. However, no evidence in the appellate record speaks to the in-court service on defendant of this restraining order and there is no stipulation in the record establishing such service or defendant's presumptive knowledge of the restraining order.

[9] Unlike the motive theory, the trial court was not asked to consider whether the evidence was admissible to prove willfulness regarding the restraining order violation or absence of mistake or accident, and consequently, there was no ruling on these theories. We conclude the evidence was admissible on these additional theories related to the restraining order violation. "We will affirm the trial court's evidentiary ruling if it is correct on any theory of law applicable to the case, even if for reasons different than those expressly stated by the trial court." (*Fruits*, *supra*, 247 Cal.App.4th at p. 205.) " ' " 'No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.' " ' " (*Ibid*., quoting *People v. Zapien* (1993) 4 Cal.4th 929, 976.)

this case, the trial court had a duty to determine whether there was sufficient evidence to establish by a preponderance of the evidence that defendant committed the prior acts. The only acts raising a question in this regard are the incidents of theft, where nobody actually saw defendant take items that later turned up missing. As we noted *ante*, defendant made his arguments concerning the lack of sufficient proof and the trial court determined that the evidence was admissible. While an express ruling on the sufficiency of the proof would create a clear record, the record demonstrates an implied finding concluding there was indeed sufficient evidence. And we agree that, although circumstantial, the evidence was sufficient to establish by a preponderance of the evidence that defendant took the missing items to allow the jury to consider the evidence on both the section 1109 and 1101, subdivision (b) theories.[10]

---

[10] Defendant was originally charged in this case with burglary related to the incident on January 23, 2018. The magistrate found there was insufficient evidence presented at the preliminary hearing to support the charge, ruling that the Proposition 115 evidence concerning the statements of defendant's mother and the neighbor who saw defendant walking away with something in his hand, were insufficient to place defendant at the scene and establish defendant took stereo components. Defendant asserts that because the January 23, 2018, incident was charged and a magistrate concluded there was insufficient evidence to establish probable cause, there was also insufficient evidence to allow the jury to consider it for purposes of section 1101, subdivision (b). It appears there may have been some confusion between defendant's mother and brother about the days the theft incidents involving the stereo equipment took place, because trial testimony of defendant's brother indicated those thefts took place on January 10 and February 21. During the trial, the only evidence of a theft having taken place on January 23, 2018, was the mother's recollection that defendant's brother told her the stereo was missing. We note that defendant's brother did not testify at the preliminary hearing. And a review of the preliminary hearing reveals that no Proposition 115 testimony was introduced relaying a statement from defendant's brother through the police other than a follow-up identification of a photograph of defendant as his brother and "the person who broke in the garage and stole my speaker." The officer who conducted the follow-up did not testify what date defendant's brother said the speaker was stolen. Nor was evidence concerning the thefts that took place on January 10 or February 21, 2018, introduced at the preliminary hearing. And no evidence was introduced at the preliminary hearing about the running shoes having been taken from the garage at some point and defendant's

## E. Section 352 Analysis

### 1. Defendant's Contentions

Defendant asserts that the prior acts evidence should have been excluded under section 352. As for the section 1109 theory, he asserts that the prior incidents were not similar to the circumstances of the charged offense, and the evidence addressed to the prior acts was not sufficiently corroborated. He asserts as to both section 1109 and 1101, subdivision (b), the probative value of the prior acts was low or nonexistent. Defendant further asserts that the potential for prejudice was high. He also asserts that the March 14, 2017, incident, during which he drove a car at his brother, was far more inflammatory than the charged offenses. Additionally, defendant asserts that the jury would be tempted to punish him for the prior acts because he had previously escaped punishment for those acts. Defendant also maintains that presentation of this evidence consumed undue time and confused the jury.

### 2. Section 352 and Standard of Review

"The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (§ 352.) "Evidence is not inadmissible under section 352 unless the probative value is 'substantially' outweighed by the probability of a 'substantial danger' of undue prejudice or other statutory counterweights. Our high court

---

shoes left behind. Nor was there preliminary hearing evidence regarding the mother confronting defendant on January 23, 2018, about breaking into the garage. As we noted in our summary of the facts *ante*, instead of denying responsibility, defendant did not respond to the mother's accusatory question. Looking to the totality of the evidence, we conclude that, despite the denial of the holding order concerning a burglary charge related to the January 23, 2018, incident, there was sufficient evidence to allow the jury to consider all of the testimony concerning the January 23, 2018, incident, and there was sufficient evidence to establish defendant took property from the home on at least two other occasions.

has emphasized the word 'substantial' in section 352. [Citations.] [¶] Trial courts enjoy ' "broad discretion" ' in deciding whether the probability of a substantial danger of prejudice substantially outweighs probative value. [Citations.] A trial court's exercise of discretion 'will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*People v. Holford* (2012) 203 Cal.App.4th 155, 167-168 (*Holford*).)

### 3. Analysis

In applying the balancing analysis under section 352, a court must determine the probative value of the evidence and place that on the probative value side of the section 352 scales. Here, as we have noted, the prior acts were highly probative under two Evidence Code theories, section 1109 and section 1101, subdivision (b). The evidence was probative of: (1) defendant's propensity to threaten or assault his brother, (2) defendant's propensity to disturb the peace of his brother and mother by a variety of conduct, including stealing from the family's home; (3) defendant's intent to threaten or injure his brother, (4) defendant's intent to steal property when he entered the home during the charged incident; (5) defendant's knowledge of the restraining order, and (6) defendant's willfulness and lack of mistake or accident in violating the restraining order. " ' "The principal factor affecting the probative value of an uncharged act is its similarity to the charged offense." ' " (*Johnson, supra*, 185 Cal.App.4th at pp. 531-532.) Contrary to defendant's contention, as previously noted, we conclude that there are substantial similarities between the charged offense and the prior acts.

And contrary to defendant's contention, problems of proof did not detract from the tendency to prove these material facts and thus did not diminish the probative value of the evidence. (Cf. *Winkler, supra*, 56 Cal.App.5th at pp. 1153-1154 [in prosecution for the murder of the defendant's third wife, evidence concerning death of his second wife was inadmissible under § 1101, subd. (b) because there was insufficient evidence to

30

establish defendant committed an act that resulted in his second wife's death].) As noted, the circumstantial evidence here pointed to defendant as the person who stole items of property from the home on at least two occasions.

We further conclude the introduction of this evidence did not consume an undue amount of time. The testimony concerning the prior acts was supplied almost exclusively by defendant's mother and brother, who also testified as to the charged offenses. And the additional prior act evidence did not consume an undue period of time relative to the trial as a whole.

We also conclude that the evidence concerning the prior acts did not give rise to a danger of undue prejudice against the defendant. " ' " '[T]he prejudice which exclusion of evidence under . . . section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence. "[A]ll evidence which tends to prove guilt is prejudicial or damaging to the defendant's case. The stronger the evidence, the more it is 'prejudicial.' The 'prejudice' referred to in . . . section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues." ' " ' " (*Fruits, supra*, 247 Cal.App.4th p. 205, quoting *Holford, supra*, 203 Cal.App.4th at p. 167.) Here, the prior acts are materially similar, and in almost every case, clearly less inflammatory, than the charged offenses. Defendant asserts the assault with a vehicle incident is more inflammatory than the charged event. It is debatable whether that incident is more inflammatory than the nighttime home invasion charged here. In any event, it was not significantly more inflammatory than the charged offenses such that there was a substantial danger that the introduction of this evidence would cause undue prejudice. (See *Hoover, supra*, 77 Cal.App.4th at p. 1029 [§ 1109 evidence was admissible in view of the fact that the evidence involved the defendant's history of similar conduct against the same victim and the evidence was not *unduly* inflammatory].)

31

Defendant argues the evidence "reasonably likely misled or confused the jury because the same prior incidents were admitted pursuant to . . . section 1109 for use as propensity evidence and pursuant to . . . section 1101 to prove intent for the burglary and knowledge of the criminal protective/restraining order, which could not be used to prove criminal propensity." According to defendant, this was "inherently confusing." Defendant does not explain why telling the jury it can consider evidence for different purposes is confusing in a generic sense or why in the specific context of this case it is "inherently confusing." We conclude it was not. The court properly instructed the jury on these matters and the record shows no confusion in this regard. (See fn. 4, *ante*.) We assume jurors are intelligent, particularly when it comes to understanding jury instructions. (See *People v. Sattiewhite* (2014) 59 Cal.4th 446, 475 [" ' " 'we must assume that jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given' " ' "].)

Defendant also complains the evidence was insufficiently corroborated to be admissible under section 1109. His argument seems to be focused only on the incidents of theft. Under section 1109, a trial court must consider the existence of corroboration in the section 352 analysis for application of the Family Code section 6211 definition of "domestic violence." (§ 1109, subd. (d)(3).) However, contrary to the implication of defendant's argument, corroboration is not a requirement. As noted, section 1109, subdivision (d)(3) states in pertinent part: "Subject to a hearing conducted pursuant to Section 352, which shall include *consideration* of *any* corroboration and remoteness in time, 'domestic violence' has the further meaning as set forth in Section 6211 of the Family Code, if the act occurred no more than five years before the charged offense." (Italics added.) Looking to the plain language of this provision, we conclude that the word "consideration" is important. Consideration of a factor such as corroboration does

not mandate the existence of that factor.[11] The word "any" is also important. We view the Legislature's use of the word "any" to mean the nature of the corroboration can be anything that serves as corroboration. Thus, contemporaneous reports to the police can serve as corroboration that an event occurred. And in this case, there was additional corroboration in the evidence that defendant's shoes were left behind when his brother's running shoes were taken. Thus, even if the trial court did not expressly state it considered corroboration, and even if corroboration was a requirement, there was corroboration here.

Defendant asserts that there was a danger of prejudice under section 352 because he was not punished for the prior acts and thus the jury would be tempted to punish him because he had previously escaped punishment for those acts. It is well settled that this is a legitimate factor for the prejudice side of the section 352 scales in the context of the admissibility of uncharged acts. (*Winkler*, *supra*, 56 Cal.App.5th at p. 1156, citing *People v. Soper* (2009) 45 Cal.4th 759, 772-773; *People v. Tran* (2011) 51 Cal.4th 1040, 1047; *Ewoldt*, *supra*, 7 Cal.4th at p. 405.) But we conclude the potential for this to happen did not *substantially* outweigh the probative value we have concluded exists here. (See generally § 352; *Holford, supra*, 203 Cal.App.4th at p. 167.)

We conclude that, contrary to defendant's contention, the trial court did not abuse its discretion in admitting the prior acts evidence under section 1109 or 1101, subdivision (b) over defendant's section 352 objections.

---

[11] The Legislature knows how to make corroboration a requirement and has expressly done so when that is the intent. (E.g. Pen. Code, § 1111 ["A conviction can not be had upon the testimony of an accomplice *unless it be corroborated* by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof"] italics added.)

## F. Due Process Contention

Citing our high court's decision in *People v. Falsetta* (1999) 21 Cal.4th 903 (*Falsetta*), defendant asserts the admission of the prior acts evidence under section 1109 violated his due process rights because the trial court allowed propensity evidence in violation of section 352. (See generally *Falsetta*, at pp. 917-918 [§ 352 provides a due process check on the admissibility of uncharged sexual misconduct under section 1108 and therefore section 1108 does not violate the due process clause].) But, as we have concluded, the trial court did not err in ruling that any prejudice related to the admission of the prior acts evidence here did not substantially outweigh the probative value.

Defendant also argues he had a due process right to have a jury decide his guilt "based on what he did in the instant case, not on who they think he is as a result of the prior bad act evidence they heard." For this argument, he relies on two cases published before the enactment of section 1109.

In *People v. Garceau* (1993) 6 Cal.4th 140, disapproved on another ground in *People v. Yeoman* (2003) 31 Cal.4th 93, 117, the defendant was charged with the murder of his girlfriend and her son. (*Garceau*, at p. 156.) Evidence of defendant's uncharged drug activity and the murder of a third person was introduced under section 1101, subdivision (b). (*Garceau*, at p. 185.) The jury was instructed that, if it believed this prior act evidence, it " 'may be considered by [the jury] *for any purpose, including but not limited to any of the following:* [¶] [*Defendant's*] character or any trait of his character . . . .' " (*Id*. at p. 186.) The Attorney General acknowledged, and our high court agreed, that this instruction was erroneous. (*Id*. at pp. 186-187.) *Garceau* obviously has no application in the context of section 1109, in which the Legislature subsequently allowed prior acts of domestic violence to prove propensity to commit offenses involving domestic violence.

In the other case on which defendant relies, *United States v. Myers* (5th Cir. 1977) 550 F.2d 1036, a federal bank robbery prosecution, the circuit court determined the

district court erred in admitting evidence that the defendant committed an uncharged bank robbery under Federal Rules of Evidence, rule 404(b) (28 U.S.C.), the federal analogue to section 1101, subdivision (b).[12]  There, the court noted that uncharged act evidence is not admissible to show criminal disposition and that "[a] concomitant of the presumption of innocence is that a defendant must be tried for what he did, not for who he is." (*Myers*, at p. 1044.)  The court then went on to engage in the federal analysis for the admissibility of uncharged act evidence under Federal Rules of Evidence, rule 404(b), an analysis that is similar to our uncharged acts evidence analysis, which includes a similarity assessment as well as the application of Federal Rules of Evidence, rule 403, the federal counterpart to our section 352.[13]  (*Myers*, at pp. 1044-1048.)

Much has transpired in the law concerning the admissibility of uncharged acts since the cases cited by defendant were published.  Indeed, the first version of section 1109, allowing prior acts of domestic violence to be admitted to prove propensity to commit offenses involving domestic violence did not become law until 1997, four years after *Garceau*. (Stats. 1996, ch. 261, § 2.)  And since its enactment, due process challenges to section 1109 have been repeatedly rejected.  (See *Johnson*, *supra*, 185 Cal.App.4th at p. 529 & cases cited therein.)

---

[12] Federal Rules of Evidence, rule 404(b) provides, in pertinent part:  "(1) *Prohibited uses*.  Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.  [¶]  (2) *Permitted uses*.  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

[13] Federal Rules of Evidence, rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Similarly, Federal Rules of Evidence, rules 413 and 414,[14] federal counterparts to California's section 1108, allowing evidence of prior sexual misconduct to show propensity to commit such crimes, were enacted in 1994 (Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103-322, Title XXXII, § 320935).  As this court has previously noted, "[t]he federal court cases rejecting due process challenges to rule 413 and . . . rule 414 are many and we have found no federal cases concluding that these rules of evidence offend due process."  (*People v. Phea* (2018) 29 Cal.App.5th 583, 604.)  Similar to our high court, the federal courts recognize Federal Rules of Evidence, rule 403, the federal analogue to section 352, is a firewall to protect against due process violations resulting from the admission of unduly prejudicial evidence in the context of admission of uncharged sex crimes evidence admitted to prove propensity.  (*United States v. Abrams* (9th Cir. 2019) 761 Fed.Appx. 670, 675, quoting *United States v. LeMay* (9th Cir. 2001) 260 F.3d 1018, 1027 ["The introduction of propensity or character evidence 'can amount to a constitutional violation only if its prejudicial effect far outweighs its probative value'; 'As long as the protections of Rule 403 remain in place to ensure that potentially devastating evidence of little probative value will not reach the jury, the right to a fair trial remains adequately safeguarded' "].)

At this point, the law allowing the admissibility of prior acts to prove propensity to commit uncharged acts of domestic violence and sexual misconduct over a due process challenge appears to be settled.  Where, as here, the trial court does a proper section 352 analysis, there is no due process violation.

---

[14] Federal Rules of Evidence, rule 413(a) provides, in pertinent part:  "In a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant."  Federal Rules of Evidence, rule 414(a) provides, in pertinent part:  "In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant."

We conclude defendant's due process rights were not violated.

## II. CALCRIM No. 852A

### A. Additional Background

The prosecution requested an instruction related to evidence of uncharged domestic violence, specifically with regard to the definition of "abuse." Over defendant's objection, the trial court instructed the jury with a modified version of CALCRIM No. 852A which read in pertinent part: "[T]he People presented evidence that the defendant committed domestic violence that wasn't charged in this case. [¶] [D]omestic violence means abuse committed against a brother or a mother of the defendant. [¶] *Abuse* means intentionally or recklessly causing or attempting to cause bodily injury or placing another person in reasonable fear of imminent serious bodily injury to himself or herself or to someone else; attacking, striking, threatening, battering, or having been restrained from doing so by a valid court order, coming within a specific distance, *or disturbing the peace of a family member*." (Italics added; see fn. 4, *ante*.)

### B. Defendant's Contentions

Defendant asserts that the trial court abused its discretion by incorporating the Family Code definition of abuse in its CALCRIM No. 852A instruction. He further asserts that the trial court erred in giving this instruction without modifying it "to explain that jurors could not consider the alleged prior domestic violence . . . to determine whether [defendant] likely committed a burglary by entering a room in his mother's house with the intent to commit theft," because theft is not an offense involving domestic violence. (Capitalization omitted.) Consistent with our conclusion that offenses involving domestic violence in section 1109 include offenses involving behavior amounting to disturbing the victims' peace, we reject this contention as well.

### C. Applicable General Principles of Law

"A trial court has a sua sponte duty to 'instruct on general principles of law that are closely and openly connected to the facts and that are necessary for the jury's

37

understanding of the case . . . .' " (*People v. Blacksher* (2011) 52 Cal.4th 769, 845-846, quoting *People v. Carter* (2003) 30 Cal.4th 1166, 1219.)  " 'We determine whether a jury instruction correctly states the law under the independent or de novo standard of review. [Citation.]  Review of the adequacy of instructions is based on whether the trial court "fully and fairly instructed on the applicable law." ' " (*People v. Turner* (2019) 37 Cal.App.5th 882, 887.)  "We consider the instructions as a whole as well as the entire record of trial, including the arguments of counsel.  [Citation.]  If reasonably possible, instructions are interpreted to support the judgment rather than defeat it." (*People v. McPheeters* (2013) 218 Cal.App.4th 124, 132.)

### D. Analysis

We have concluded that section 1109 incorporates the Family Code definition of abuse.  Thus, the trial court did not err in including the legally correct and applicable Family Code definition of abuse in its modified CALCRIM No. 852A instruction.

Defendant asserts that CALCRIM No. 852A, as given, was erroneous because it allowed the jury to infer from prior acts of domestic violence his propensity to commit burglary on an intent to steal theory, which, according to defendant, is not an act of domestic violence.  However, as we have pointed out, breaking into the victims' home to steal property can result in a disturbance of the victims' peace.  Disturbing the peace was included in the court's modified CALCRIM No. 852A instruction.  We conclude the instruction was not erroneous.[15]

### E. Due Process Violation

---

[15] The standard language of CALCRIM No. 852A regarding "abuse" reads as follows: "*Abuse* means intentionally or recklessly causing or attempting to cause bodily injury, or placing another person in reasonable fear of imminent serious bodily injury to himself or herself or to someone else."  We recommend that the Judicial Council's CALCRIM Advisory Committee consider adding a bracketed alternative definition for "abuse" that would include the behaviors listed in Family Code section 6320.

Defendant further asserts that the propensity evidence, and the trial court's use of the definition of abuse from the Family Code in CALCRIM No. 852A, reduced the prosecution's burden of proving every element of burglary beyond a reasonable doubt. Again, we disagree.

As a general matter, our high court has previously approved CALJIC No. 2.50.01, a substantially similar instruction to CALCRIM No. 852A, in *People v. Reliford* (2003) 29 Cal.4th 1007, 1016. Insofar as applicable, we are, of course, bound to follow our high court's decision in *Reliford*. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Additionally, this court has previously rejected similar challenges to CALCRIM No. 852, the former instruction involving section 1109 uncharged act evidence. (See *People v. Reyes* (2008) 160 Cal.App.4th 246, 250-253; *People v. Johnson* (2008) 164 Cal.App.4th 731, 738-740.)

Defendant asserts that the trial court's error in instructing the jury that it could consider the prior acts of domestic violence to conclude that defendant entered the house with the intent to commit theft, which, according to defendant, is not an act of domestic violence, reduced the prosecution's burden of proof. However, the Legislature established what evidence is admissible to prove propensity to commit domestic violence and defined offenses involving domestic violence to include disturbing the victim's peace. The evidence here was admissible to prove a propensity to engage in such behavior toward the victims. Consistent with our analysis concerning the admissibility of this evidence over defendant's due process challenge, we conclude the modified version of CALCRIM No. 852A did not violate defendant's due process rights. Moreover, we note that the court also properly instructed with CALCRIM No. 375 covering section

1101, subdivision (b) theories, including use of the same evidence to establish defendant's intent to steal when entering the victims' home.[16]

### III. Cumulative Error

Defendant asserts that the cumulative effect of the errors he alleges prejudiced him, mandating reversal. We reject this contention. The premise behind the cumulative error doctrine is that, while a number of errors may be harmless taken individually, their cumulative effect requires reversal. (*People v. Bunyard* (1988) 45 Cal.3d 1189, 1236-1237, disapproved on another ground in *People v. Diaz* (2015) 60 Cal.4th 1176.) We have concluded there has been no error. Moreover, a defendant is "entitled to a fair trial but not a perfect one." (*People v. Cunningham* (2001) 25 Cal.4th 926, 1009.) Defendant was not deprived of a fair trial.

### IV. Sentence on Count Two – Penal Code Section 654

In imposing sentence on count two, willfully disobeying a court order, the trial court stated: "As to the guilty finding on Count 2, the Court agrees with the probation report that it's part of a continued course of conduct and is going to treat it under 654 *and not impose additional time*." (Italics added.) In our original opinion we pointed out that this sentence was unauthorized and remanded the case back to the trial court to impose a sentence on count two and then stay execution of that sentence pursuant to Penal Code section 654.

---

[16] In addition to the CALCRIM No. 852A and CALCRIM No. 375 instructions more fully set forth is footnote 4, *ante*, the trial court also instructed the jurors on the prosecution's burden of proving defendant's guilt beyond a reasonable doubt. (CALCRIM No. 220.) And the court instructed the jury that certain evidence was admitted for a limited purpose, and to only consider the evidence for that purpose and no other. (CALCRIM No. 303.) The trial court also properly instructed the jury with the elements of burglary. (CALCRIM No. 1700.) We presume the jury understood and followed the court's instructions. (*People v. Wilson* (2008) 44 Cal.4th 758, 803.)

After we filed our original opinion in this matter, the Governor signed into law A.B. 518, effective January 1, 2022.  A.B. 518 amended Penal Code section 654, subdivision (a) to provide, in pertinent part:  "An act or omission that is punishable in different ways by different provisions of law *may be punished under either of such provisions*, but in no case shall the act or omission be punished under more than one provision."  (Italics added.)  Previously, where Penal Code section 654 applied, the sentencing court was required to impose the sentence that "provides for the longest potential term of imprisonment" and stay execution of the other term.  (Pen. Code, § 654, former subd. (a).)  As amended by A.B. 518, Penal Code section 654 now provides the trial court with discretion to impose and execute the sentence of either term, which could result in the trial court imposing and executing the shorter sentence rather than the longer sentence.

Because A.B. 518 was enacted while defendant's appeal was not yet final and it provides the trial court new discretion to impose a lower sentence, defendant is entitled to its ameliorative benefit.  (*In re Estrada* (1965) 63 Cal.2d 740, 744-745 [absent evidence of contrary legislative intent, ameliorative criminal statutes apply to all cases not final when the statute takes effect]; see also *People v. Stamps* (2020) 9 Cal.5th 685, 699 [applying retroactively legislative amendment providing trial court discretion to strike or dismiss a Pen. Code, § 667, subd. (a) serious felony enhancement pursuant to Pen. Code, § 1385]; *People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 307-309 [applying retroactively amendment enacted by the electorate to require juvenile courts to conduct transfer hearings, providing juvenile courts the discretion to determine whether a minor's case should remain in juvenile court or be transferred to adult court]; *People v. Woods* (2018) 19 Cal.App.5th 1080, 1089-1091[applying retroactively legislative amendment providing trial court discretion to strike or dismiss firearms enhancements pursuant to Pen. Code, § 1385].)  Both parties agree A.B. 518 applies retroactively.

However, A.B. 518 does not impact how a trial court must pronounce sentence when Penal Code section 654 is implicated. Experience shows, as illustrated by the sentencing in this case, that the correct way to pronounce such sentences is not universally understood. Consequently, we restate this settled law here.

When a court determines that a conviction falls within the meaning of Penal Code section 654, it is necessary to *impose* sentence and to stay the *execution* of the duplicative sentence. (See *People v. Duff* (2010) 50 Cal.4th 787, 796 (*Duff*); *Alford, supra,* 180 Cal.App.4th at p.1469; *People v. Niles* (1964) 227 Cal.App.2d 749, 755-756.) The trial court is required to impose judgment on each count, which involves selecting a term, and then staying execution of the duplicative sentence, the stay to become permanent upon defendant's service of the portion of the sentence not stayed. (*People v. Salazar* (1987) 194 Cal.App.3d 634, 640 (*Salazar*); see *Duff,* at p. 796; Couzens, Bigelow & Prickett, Sentencing Cal. Crimes (The Rutter Group 2017) § 13:10.) "This procedure ensures that the defendant will not receive 'a windfall of freedom from penal sanction' if the conviction on which the sentence has not been stayed is overturned." (*Salazar*, at p. 640.) Thus, it is improper to impose no sentence or to stay *imposition* of the sentence. (See Couzens, Bigelow & Prickett, at § 13:10.) This procedure even applies when one of the sentences pertains to a misdemeanor conviction. (See *People v. Crabtree* (2009) 169 Cal.App.4th 1293, 1327 [staying sentence on a violation of Pen. Code, § 647.6, subd. (a), misdemeanor child molestation, pursuant to Pen. Code, § 654, without imposing the sentence to be stayed, was an unauthorized sentence requiring remand for the trial court to impose and stay execution of the sentence]; *People v. Robinson* (1991) 226 Cal.App.3d 1581, 1587, disapproved on other grounds in *People v. Cromer* (2001) 24 Cal.4th 889, 901, fn. 3 [imposition of sentence on misdemeanor assault concurrent with sentence on felony battery with serious bodily injury violated Pen. Code, § 654; sentence on the misdemeanor count should have been imposed and execution stayed].)

Accordingly, after determining which sentence to execute, courts must impose a sentence on the other count to which Penal Code section 654 applies and then *stay execution of that sentence* pursuant to Penal Code section 654, subdivision (a), the stay to become permanent upon defendant's service of the portion of the sentence not stayed. (See *Salazar, supra,* 194 Cal.App.3d at p. 640; *Duff, supra,* 50 Cal.4th at p. 796; Couzens, Bigelow & Prickett, at § 13:10.)

We shall remand the matter to the trial court for resentencing so that the court may select a sentence to impose on count two, impose that sentence, and then stay execution of sentence on either count one or count two pursuant to Penal Code section 654 as amended by A.B. 518.

## DISPOSITION

The matter is remanded to the trial court for that court to impose sentence on count two and then exercise its discretion to stay execution of sentence on either count one or count two pursuant to Penal Code section 654 as amended by A.B. 518. If the trial court imposes and executes sentence on count one, it is directed to prepare an amended abstract of judgment and forward a certified copy thereof to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.

                                  /s/
                              MURRAY, J.

We concur:

/s/
RAYE, P. J.

/s/
RENNER, J.